## S. BUCHSBAUM & CO. v. FEDERAL TRADE COMMISSION.

### No. 8504.

Circuit Court of Appeals, Seventh Circuit.
Feb. 20, 1947.

Rehearing Denied April 12, 1947.

Walter H. Moses, of Chicago, Ill., for petitioner.

Wm. T. Kelley, Chief Counsel, Joseph J. Smith, Jr., Asst. Chief Counsel, and James W. Cassedy, Asst. Gen. Counsel, all of Washington, D. C., for respondent.

Before SPARKS and KERNER, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge.

This proceeding seeks to review and set aside a cease and desist order of the Federal Trade Commission. We formerly reversed for what we thought was a violation of the rule of confrontation of witnesses. 153 F.2d 85. Respondent applied for certiorari, and in the Supreme Court, petitioner withdrew this assignment of error in this case, upon which it had so strenuously relied, and upon which we based our decision, and the Supreme Court thereupon vacated the order of this court and remanded the case to this court for consideration of the other errors assigned below.

The issues are fully set forth in our original opinion and they will not be repeated here, other than to say that the controlling issue is whether the Commission was authorized to prohibit absolutely and unqualifiedly petitioner's use of the trade name "Elasti-Glass" and the word "glass" in describing its articles made of synthetic resin.

Since the cause was remanded to this court the Commission has filed its motion to remand the cause to the Commission for further consideration. This motion is denied.

The articles manufactured and sold by petitioner are numerous and include such things as suspenders, rain coats, garters, belts, shampoo capes, watch straps and the like. They are made and sold at a much

cheaper price than articles made of that kind of glass in which silica is an essential ingredient. Petitioner's products are made of plastics and are quite pliable, tensile, durable and transparent, and fully serve the purposes for which they are manufactured and marketed to the general public.

Illustrative of the use by the general public of plastic glass is "shatter-proof glass" which has been used many years and still is in constant use. It is a laminated glass consisting of two layers of silica glass with a layer of plastic glass between them. Each layer is perfectly transparent. The three layers are indistinguishable and appear to the eye as one glass. The middle plastic layer is the element that prevents the other layers from shattering when broken, and as a unit it is known and recognized generally as "shatter-proof glass."

Petitioner's products are made from plastic material such as used in the middle layer of the "shatter-proof glass," and it advertises and sells its products as "Elasti-Glass" products. Certain competitors of petitioner manufacture their products from the same elements used in making the upper and lower layers of the "shatter-proof glass." At any rate they use no plastics, and they therefore contend that petitioner should not be permitted to advertise or sell its products under the name "Elasti-Glass," or any other name containing the word "glass."

The Commission, in proof that the word "glass" as understood by the public means common glass, such as that found in window panes, tumblers and bottles, submitted the testimony of 10 witnesses,— two housewives, a junior college student, a laundry employee, two hospital employees, an assistant of the local office of a life insurance company, an employee of the National Association of Dyers and Cleaners, a local operating manager of the National Better Business Bureau, and a writer of non-fiction articles which had appeared in such magazines as Coronet, Cosmopolitan, The Reader's Digest, and the Saturday Evening Post. All save one, after reading petitioner's advertisements of "Elasti-Glass," thought that petitioner had

discovered and was using a new process by which it was able to change the nature of and to make pliable the glass which is found in window panes and the like, although there was nothing in such advertisements which intimated any such thing. The manager of the National Better Business Bureau was not in any manner deluded or confused by such advertisements for he said the Bureau differentiates between vinyon and glass fiber, and that the latter is made of real fiber glass and that the former is the trade name of vinyl plastic yarn contained in "Elasti-Glass" neckties. In making this differentiation the Bureau evidently gave no consideration whatever to the definitions of the word "glass" as contained in the American dictionaries, or the Oxford (English) dictionary, as we shall later show.

The writer of non-fiction articles assumed that "Elasti-Glass" products were made of window pane glass which caused her to characterize them as "fiber glass" in an article written by her for "Cosmopolitan." She was not an employee of petitioner nor was she authorized by it to make such statement. She received but one criticism concerning that characterization, and it developed later that it came from a person considerably interested in defeating petitioner's contention before the Commission and here. This witness said that she was neither a chemist nor an expert on glass; that all she knew about the subject was her general public understanding of what glass is, and she supposed she did not know whether "synthetic resin materials are not glass."

This record does not disclose that any witness for the respondent, except this lady, ever consulted any dictionary before testifying, as to the meaning of the word "glass." She consulted the Oxford, while dressing, just before she left her home to testify. Of course, neither the Oxford nor any of the many American dictionaries which we have consulted limit the definitions of the word "glass" to that made from silica, or to that from which window panes or goblets are usually made. True, the latter are perhaps the most usual forms in which we see glass, but each dictionary

defines the word as any substance that resembles glass. The word is not derived from any element or combination of elements from which any kind of glass is made. From all sources available to us it is clear that the word glass derives from the appearance of the product after it is made. No one denies that the resemblance of the substance of petitioner's products to that of articles made from common window glass or tumblers or that of shatter-proof glass is perfect, and not one dissatisfied customer of petitioner's products has voiced an objection or complaint with respect to them.

The complaint filed by the Federal Trade Commission alleges in substance that petitioner operates a factory wherein are manufactured the various articles above referred to, and allied merchandise, made from "Vinylite," an *organic* material of *glass-like appearance* which it advertises, sells and distributes in interstate commerce in the United States (our emphasis throughout); that "Vinylite" is the registered trademark of a chemically manufactured plasticized resinous material *resembling glass,* purchased by petitioner, in the form of pliable, clear or colored, transparent or translucent, semi-elastic sheets, which after further processing petitioner converts into the various articles of men's accessories above referred to, as made of "Elasti-Glass," the trade name so used by it. Petitioner in advertising sometimes refers to its products as a form of glass.

The complaint further alleges that processes for the fabrication of *inorganic glass* into similar materials have been developed at considerable expense by various members of the glass industry, and that many of such articles made from inorganic glass materials have already been manufactured and, amidst wide publicity, have been and are being marketed to the public, "long accustomed to the worth and use of glass."

The Commission further alleges that articles made of Vinylite "contain no glass whatsoever, for * * * Vinylite is not a glass but rather * * * a product made by the heating and mixing of petroleum or coal and salt with a special catalytic agent and chemicals to induce the formation of certain gases and distillates, which in cooling results in the synthetic resin product known as Vinylite." Hence, they say, the acts and practices of petitioner, as enumerated, are all to the prejudice and injury of the public and constitute unfair and deceptive acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act, 15 U. S.C.A. § 41 et seq.

We find nothing in that Act which discloses any intention on the part of Congress to prevent any citizen from selling and transporting in interstate commerce any article useful and beneficial to the public, made by him under a descriptive name as recognized and approved by our American lexicographers since the birth of our Nation, or which at this time is recognized and approved by them. We find in this record no evidence of any injury to any dissatisfied customer, indeed, there are no dissatisfied customers so far as this record discloses. It is intimated that the injury will occur to those who have been "long accustomed to the worth and use of glass." If this class of customers would consult their lexicons and inform the merchants as to the kind of glass they desire they will never be misled. Certainly they can not be misled or injured by petitioner's advertisements.

The Commission contends that actual deception of purchasers need not be shown in its proceedings, and that representations which have a "capacity" to deceive may be proscribed. This is quite true. Federal Trade Commission v. Algoma Co., 291 U.S. 67, 54 S.Ct. 315, 78 L. Ed. 655; D. D. D. Corp. v. Federal Trade Commission, 7 Cir., 125 F.2d 679. However, even though there be no proof of actual deception required, there must be a showing that the acts and practices sought to be proscribed are detrimental to the public interest in order to satisfy the statutory requirement that the proceeding be in the public interest. 15 U.S.C.A. § 45 (b). Here the Commission made no finding that the deception, if any, had ever resulted in or had any tendency to result in detriment to the purchasing public. We

124

find nothing in the findings to support the conclusion that the acts and practices are "all to the prejudice and injury of the public."

It is quite evident that this proceeding was actuated by the manufacturers of such glass as contained in window panes, tumblers and the like. The trouble arises in trying to compete with petitioner in the sale of the same articles made of "Elasti-Glass" by petitioner. Thus far, it appears from the record, the competition has not been successful for such manufacturers, because of the cheaper prices of petitioner's products.

The findings and conclusion of the Commission that petitioner has been guilty of false and prejudicial statements and unfair and deceptive acts which have injured or will injure the public are not supported by substantial evidence.

The order of the Board is set aside.