657 P.2d 117

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Petitioner,**

v.

**Liborio GOMEZ, Respondent.**

**No. 14541.**

Supreme Court of New Mexico.

Dec. 28, 1982.

Rehearing Denied Jan. 21, 1983.

Charles McCormack, Southern New Mexico Legal Services, Clovis, for respondent.

Jeff Bingaman, Atty. Gen., Richard Shapiro, Asst. Atty. Gen., Santa Fe, for petitioner.

## UPON CERTIORARI

PAYNE, Chief Justice.

 This Court granted certiorari in *State of New Mexico v. Gomez,* in which the Court of Appeals majority opinion ruled to continue welfare benefits that Gomez had been receiving under AFDC (Aid to Families with Dependent Children). Specifically, the court held that Gomez was deprived of due process because his AFDC termination hearing was conducted by telephone and not in the presence of a hearing officer who could observe his demeanor. Judge Wood dissented from the majority opinion holding that Gomez' benefits should be terminated and outlined the reasons. With the exception of minor procedural questions, this case primarily dealt with the issue of whether telephonic hearings in AFDC termination proceedings violate due process. We adopt the dissenting opinion authored by Judge Wood of the Court of Appeals, thereby upholding the constitutionality of the telephonic hearings.

IT IS SO ORDERED.

FEDERICI, RIORDAN and STOWERS, JJ., concur.

SOSA, Senior Justice, respectfully dissenting and concurring with the Court of Appeals' majority opinion.

## OPINION

SUTIN, Judge.

Gomez appeals a Fair Hearing Decision of the Human Services Department. We reverse.

Gomez' AFDC benefits were terminated as a result of a telephonic hearing conducted by the hearing officer and his report to HSD. Prior to the hearing, Gomez, by mail, stated:

> We again insist that the requested hearing must be held in person to satisfy due process requirements since the decision clearly depends on Mr. Gomez' credibility, which cannot be judged over the telephone * * *.

In response, the hearing officer stated:

> During the Pilot Project testing the use of telephone conferences in Fair Hearings, one of the requisites of the Pilot Model was that a client might refuse to consent to a telephone hearing. However, based on the results of the Project and limitations imposed by time and the budget, the Department has designated certain counties where Fair Hearing will be held only by telephone * * *.

> I have accordingly scheduled a hearing for your client for November 10, 1981 at 10:00 A.M. * * *.

On the morning of the hearing, the hearing officer, by telephone, read both letters into the record. Gomez made it clear on the record that he was still in opposition to the telephone hearing. The hearing officer proceeded with the telephonic hearing.

The hearing officer has the power of "examining witnesses." Section 27–3–3(C), N.M.S.A.1978 (1982 Repl.Pamph.). The examination of a witness consists of the series of questions put to him by the hearing officer for the purpose of bringing before him the knowledge which the witness has of the fact and matters in dispute, or of probing and sifting his evidence previously giv-

en. See, Black's Law Dictionary (Rev. 4th Ed. 1968) p. 664. In a telephonic hearing, a hearing officer can examine witnesses but cannot observe them. A telephonic television hearing would afford a public officer the opportunity to observe the demeanor of a witness.

Black's Law Dictionary (Rev. 4th Ed. 1968) p. 517 defines "Demeanor":

As respects a witness or other person, relates to physical appearance. [Citation Omitted.] It embraces such facts as the tone of voice in which a witness' statement is made, the hesitation or readiness with which his answers are given, the look of the witness, his carriage, his evidences of surprise, his gestures, his zeal, his bearing, his expression, his yawns, the use of his eyes, his furtive or meaning glances, or his shrugs, the pitch of his voice, his self-possession or embarrassment, his air of candor or seeming levity. [Citation Omitted.]

" 'The tongue of the witness,' it has been said, 'is not the only organ for conveying testimony.' " Frank, Law and The Modern Mind, p. 109 (1936).

"Demeanor evidence may be a great weight in determining who is telling the truth." *State v. Engstrom,* 226 Minn. 301, 32 N.W.2d 553, 559 (1948).

The failure of a hearing officer or trial examiner to observe the demeanor of witnesses denies a party due process of law. *S. Buchsbaum & Co. v. Federal Trade Commission,* 153 F.2d 85 (7th Cir.1946). Supplemental opinion, 160 F.2d 121 (1947); *U.S. v. Raddatz,* 592 F.2d 976 (7th Cir.1979); *Smith v. Dental Products Co.,* 168 F.2d 516 (7th Cir.1948); *Shawley v. Industrial Commission,* 16 Wis.2d 535, 114 N.W.2d 872 (1962); *Trzebiatowski v. Jerome,* 24 Ill.2d 24, 179 N.E.2d 622 (1962).

*Buchsbaum* involved a hearing before the Federal Trade Commission based upon testimony obtained by one trial examiner who died. A second trial examiner completed the taking of the testimony, closed the case and made his report to the commission. The court said:

Indeed, under those authorities the Commission should disregard the finding of the Examiner if he had not complied with the rule of confrontation, and that is the precise question which confronts us. Congress has authorized the appointment of Examiners in such cases and they are the eyes and ears of the Commission. There is no complaint as to this delegated power, but it certainly cannot be said that the appointment would free the Examiner from the duty of observing the demeanor of witnesses, for this would amount to a lack of due process to which petitioner is entitled. [Id. 87.]

In *Smith,* the hearing officer was a master who died before making any finding or report. A transcript of the evidence was lodged with the district judge upon which a final judgment was entered. The court followed *Buchsbaum.* The *Smith* court said:

The reason for the rule is applicable here; the deciding officer, whether administrative in character or judicial, has a real function to perform in due process. The defect is one going to the right of the parties to have a decision from the agency having jurisdiction upon the merits upon testimony submitted by witnesses whom the trial tribunal has seen and heard. [Id. 519.].

As *Raddatz* said:

Our reading of the record convinces us of the wisdom of the traditional practice. The record here does not reveal a pattern of facts that exposes the defendant's testimony as wholly incredible. Thus the truth cannot be derived from this written record without an intolerably high margin of error—a margin of error that time-honored tradition teaches can be substantially reduced by simply requiring the trier of fact to hear and observe the witnesses. [Id. 983–4.]

Gomez was heard but not seen. He was denied due process of law.

Judge Wood points out in his dissent that "demeanor" of a witness is not an aspect of the constitutional right of confrontation. We agree. The Confrontation Clause of the Sixth Amendment provides that "In all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Its primary object is to compel an adverse witness, not an accused, to stand face to face with the jury in order that they may look at him and judge by his demeanor whether he is worthy of belief. But this rule must occasionally give way to considerations of public policy and the necessities of the case. "The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused." *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). A witness not present at trial should not allow an accused to go scot free when the witness' former testimony is available. The rights of the public demand it. Therefore, the demeanor of the witness is only an incidental benefit of the accused.

The Confrontation Clause does not involve the demeanor of an accused who takes the witness stand. A jury would not be allowed to sit in a jury box outside the court room and listen by telephone to the accused's testimony. Under due process of law, the demeanor of an accused is an essential ingredient in the determination of his guilt or innocence.

Judge Wood relies upon *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In each of these cases, no evidentiary hearing was held prior to termination of public assistance or disability benefit payments to a recipient. The recipient had not testified. The demeanor of the recipient was not an issue. The question for decision was whether the Due Process Clause of the Fifth Amendment required that the recipient be afforded an opportunity for an evidentiary hearing before the termination of social security public assistance or disability benefit payments. *Goldberg* states that the recipient may request a post-termination "fair hearing", that

[t]his is a proceeding before an independent state hearing officer at which the recipient may appear personally, offer oral evidence, confront and cross-examine the witnesses against him, and have a record made of the hearing. If the recipient prevails at the "fair hearing" he is paid all funds erroneously withheld. [397 U.S. 259–260, 90 S.Ct. at 1016.]

The instant case is involved with a post termination "fair hearing" procedure, not with whether a recipient should be afforded an evidentiary hearing *before* termination of benefits. *Goldberg* and *Mathews* have no bearing upon the due process issue in the case before us.

Before the close of the case, Gomez requested that the record be kept open for 10 days to allow the submission of a doctor's report concerning the re-examination of Gomez before the hearings. The hearing officer granted the request. The hearing was adjourned. The report was filed on December 4, 1981, and made a part of the record as Exhibit F. Appearing in the record as Exhibit G, dated January 12, 1982, was a memorandum to the hearing officer, the subject of which was: "Review of Post-Hearing Medical Evidence." It recites that the Incapacity Review Unit made a careful review of existing medical reports, the new medical report submitted by Gomez and the fair hearing transcript. Each of the doctors' opinions were summarized and the memorandum concluded that:

The IRU has determined that the client is able to work, that he is not disabled * *.

In the report of the hearing officer to HSD, it stated:

3. After the hearing I requested that the IRU review the transcript and the latest medical report submitted . . . . This was the third review by the IRU, of the client's case. Attached as Exhibit G are IRU's findings supporting their original decision of denial made in February 1981, and again in October 1981.

In his findings of fact, the hearing officer stated:

6. The IRU has reviewed the client's medical reports and case record for a

third time. * * * Medical Consultant to IRU, in each review found that the client is not disabled.

The report of the hearing officer was the basis upon which the "Fair Hearing Decision" was made.

The hearing officer did not submit the memorandum to Gomez nor re-set the case for another hearing at which time Gomez could examine and question the validity of the memorandum or object to its admission in the record. HSD argues that Gomez, by offering Exhibit F after the hearing, waived any objection to Exhibit G and is estopped to deny the validity of acceptance into evidence of Exhibit G. We disagree. The hearing officer allowed Gomez to file Exhibit F. The hearing officer, one who sits as fair and impartial, who governs the proceedings initiated by the county, did not announce that Exhibit F would be reviewed by IRU, or that a memorandum would be prepared and admitted in evidence as Exhibit G. Neither did the county request it. Section 275.31 of the Income Support Div., Program Manual, Volume I states:

The right to a hearing includes the right * * * to have a hearing which fully safeguards the client's opportunity to present his case * * *.

Section 275.472 states:

All information presented or used by the county office (or its witnesses, if any) during the course of the hearing must be heard by or, if written, must be available to the claimant or his representative for examination prior to the hearing as well as during the hearing itself. *No other information may be a part of the hearing record or used in making a decision on the case.* [Emphasis added.]

The county argues:

Since * * * it was Gomez, through counsel, who requested that the record remain open, it is clear that Gomez manifested an actual intention to relinquish his rights under ISD Manual § 275.472 * *.

This attempted escape hatch does not meet the challenge of § 275.472 nor the rules of administrative procedure. Neither Gomez nor the county had access to the memorandum. There is no hearing when a party does not know what evidence is offered or considered and is not given an opportunity to test, explain or refute. All parties must be fully appraised of the evidence submitted or to be considered and must be given an opportunity to inspect documents and offer evidence in explanation or rebuttal. *Transcontinental Bus System v. State Corp. Commission,* 56 N.M. 158, 241. P.2d 829 (1952). Hearings before administrative bodies need not be conducted generally with the formality of court hearings or trials, but procedures before such bodies must be consistent with the essentials of a fair trial. *Ferguson-Steere Motor Co. v. State Corp. Com'n,* 63 N.M. 137, 314 P.2d 894 (1957). See, *First Nat. Bank v. Bernalillo Cty. Valuation,* 90 N.M. 110, 560 P.2d 174 (Ct.App.1977), Hernandez, J., specially concurring.

*Hillman v. Health and Soc. Services Dept.,* 92 N.M. 480, 590 P.2d 179 (Ct.App. 1979) presented a similar problem under the same regulation. At the end of the fair hearing, the hearing officer decided to refer a medical statement admitted in evidence to IRU for a recommendation. IRU concluded that the statement was completely inadequate. It recommended a psycho-diagnostic and orthopedic examination and requested a social summary to accompany the medical reports. Hillman refused upon the belief that her continued eligibility would be made on evidence outside the fair hearing. Her benefits were terminated. In reversing the "Fair Hearing Decision" this Court said:

The record * * * does not show that the hearing would be reopened in order to allow appellant to present her case in light of the resulting medical reports and accompanying social summary. In this situation, Section 275.31 demanded that appellee advise appellant of the availability of another hearing. Because appellee failed to inform appellant of this availability, appellant's refusal to consent to the requested examination was justified. Therefore, Section 241.72 cannot be used

as a lawful basis for terminating appellant's benefits. [Id. 483, 590 P.2d 179.]

*Hillman* also stated:

We have already indicated that Section 275.472 requires the availability of examination as a requisite for inclusion in the record. Therefore, the availability to examine reports made pursuant to Section 275.472 is implicitly required in this section's provision that they be "made part of the record." [Id. 482, 590 P.2d 179.]

The difference between *Hillman* and the instant case is that the hearing officer in the instant case actually did that which was prohibited in *Hillman*. The memorandum was made a part of the record without examination by Gomez and the hearing officer failed to make another hearing available. The Department's decision was not rendered in accordance with law.

The "Fair Hearing Decision" is reversed. Gomez is entitled to a hearing with the hearing officer present and presiding. AFDC and medicaid benefits of Gomez and his family shall be reinstated and paid in full from the date payments ceased and shall continue unless a fair hearing decision to the contrary is made.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WOOD, J., dissents.

WOOD, Judge (dissenting).

I would affirm the decision of the Department to terminate benefits that Gomez had been receiving under the welfare category of AFDC (Aid for Dependent Children). These benefits had been provided on the basis that the children had been deprived of parental support because of the physical or mental incapacity of Gomez. 1 Dept. of Human Services, Income Support Division Program Manual, § 221.71.

■ The Program Manual, *supra,* § 221.-723, defines physical or mental incapacity to be

physiological, mental or psychological impairment of the person that, when considered in connection with the pertinent socio-economic conditions, results in a substantial lack of or reduction in the ability of the person to fulfill his normal function of parental support * * *. Determination of the existence of incapacity requires proof of the impairment plus an evaluation of the effect of the impairment upon the person's ability to function.

Under § 221.723, for benefits to be paid on the basis of a parent's disability, there must first be an impairment on the part of the parent. Absent an impairment, there is no need to consider socio-economic conditions.

Gomez, at one time, apparently was impaired; he has been receiving AFDC benefits for a number of years. This case involves the decision that Gomez is no longer disabled. The decision was based on medical reports from an orthopedic surgeon, an internist and a psychologist. Each of these persons had examined Gomez; each had concluded that Gomez was not disabled. Their reports are substantial evidence supporting the decision to terminate benefits. *Richardson v. Perales,* 402 U.S. 389, 28 L.Ed.2d 842, 91 S.Ct. 1420 (1971). The medical report submitted by Gomez does not substantially contradict the reports of the three specialists.

Gomez' brief on appeal makes three arguments.

■ One argument is that the hearing officer seemed to proceed on the assumption that Gomez' subjective complaints were insufficient to show that he was disabled. This is speculative. The hearing officer's findings were based on the medical and psychological evidence, but these findings do not show that the hearing officer considered subjective complaints to be legally insufficient for a determination of disability. Gomez' argument, in effect, is that his subjective complaints should have been believed, regardless of the opinions of the specialists who examined him. The decision was based on *all* of the evidence presented. Gomez' complaints were not to be considered in disregard of the views of the three specialists. *See* § 27–3–3(C), N.M.S.

A.1978 (1982 Repl.Pamph.); Program Manual, *supra*, § 275.472.

■ A second argument is that the hearing officer considered evidence that was not available to Gomez. This argument is factually correct. After the hearing was concluded, the hearing officer received and considered a report of the "Incapacity Review Unit". This report reviewed the various medical evaluations that had been admitted as evidence. Such a report would have been proper evidence if the report had been available to Gomez before the hearing was concluded and had been admitted as evidence. *Richardson v. Perales, supra.* Because the report was not available to Gomez before the hearing concluded, and was not properly admitted into evidence, consideration of this report by the hearing officer violated Program Manual, *supra,* § 275.472.

The Department claims the hearing officer's consideration of the report of the "Incapacity Review Unit" was not legal error because Gomez either waived any such contention or is estopped to make this contention. These contentions are frivolous; there is no factual basis for either waiver or estoppel.

■ The majority opinion holds that the hearing officer's consideration of the report of the Incapacity Review Unit was error. I agree. The majority opinion apparently considers this violation of the rules to be reversible error. I disagree. The report did no more than agree with the reports of the three specialists, which were properly in evidence. The reports of the three specialists are substantial support for the decision. Consideration of the report of the Incapacity Review Unit, because of its contents, could not have prejudiced Gomez, and was harmless error.

Gomez' third argument is that he was deprived of due process because the termination hearing was conducted by telephone. He does not claim a violation of the due process requisites for terminating welfare benefits stated in *Goldberg v. Kelly,* 397 U.S. 254, 25 L.Ed.2d 287, 90 S.Ct. 1011 (1970). Those requisites are summarized in *Mathews v. Eldridge,* 424 U.S. 319, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976), Footnote 4:

4. In Goldberg the Court held that the pretermination hearing must include the following elements: (1) "timely and adequate notice detailing the reasons for a proposed termination"; (2) "an effective opportunity [for the recipient] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally"; (3) retained counsel, if desired; (4) an "impartial" decisionmaker; (5) a decision resting "solely on the legal rules and evidence adduced at the hearing"; (6) a statement of reasons for the decision and the evidence relied on.

*Goldberg, supra,* states that these requirements are "procedural safeguards, adapted to the particular characteristics of welfare recipients, and to the limited nature of the controversies to be resolved." *Goldberg,* supra, disclaims any intention to impose requirements other than those above quoted. The requirements appear to have been imposed in *Goldberg, supra,* because of the impact an improper eligibility determination would have on the welfare recipient: "termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." (Emphasis in original.)

■ Although the due process requirements stated in *Goldberg v. Kelly, supra,* were met, Gomez asserts that even though he presented argument and evidence orally, due process was violated because he was not *seen.* He points out that § 27–3–3(C), *supra,* provides that the hearing is to be conducted so that his contentions are "fairly presented." He also points out that Program Manual, *supra,* § 275.472, provides that he may present his case "in any way he desires". Neither the statute nor the rule confer authority upon the welfare recipient to dictate the format of the termination hearing; the recipient cannot require, for example, a videotaped hearing. Nor may he dictate the place of the hearing. Neither the statute nor the rule support his due process argument.

■ Gomez' argument, essentially, is that due process is violated if the hearing officer does not observe his demeanor. Some cases hold that demeanor is an aspect of the constitutional right to confrontation in criminal cases and an aspect of due process in non-criminal cases. This view, however, is not supported by New Mexico case law or federal constitutional law.

New Mexico holds that "demeanor" is not an aspect of the constitutional right of confrontation. *State v. Jackson,* 30 N.M. 309, 233 P. 49 (1924); Opinion of Hernandez, J. in *State v. Tijerina,* 84 N.M. 432, 504 P.2d 642 (Ct.App.1972), *aff'd* 86 N.M. 31, 519 P.2d 127 (1973); *see State v. Lunn,* 82 N.M. 526, 484 P.2d 368 (Ct.App.1971). The United States Supreme Court has never held that "demeanor" is an aspect of the constitutional right of confrontation. *Ohio v. Roberts,* 448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980); *California v. Green,* 399 U.S. 149, 26 L.Ed.2d 489, 90 S.Ct. 1930 (1970).

Whether Gomez was deprived of due process because the hearing officer could not *see* Gomez in a telephonic hearing depends on whether the hearing was not conducted in a "meaningful manner". See *Goldberg v. Kelly, supra.* Gomez contends the telephonic hearing was not meaningful because his efforts to remain on welfare depend upon his credibility, and the hearing officer could not judge his credibility without seeing him. This is incorrect.

■ Gomez testified that he was unable to work. The psychologist pointed out that Gomez "feels" he is unable to work, but concluded there was no evidence that he was unable to work because of a psychiatric problem. The psychologist reported that he (the psychologist) found "evidence that he [Gomez] would be unable, as far as he [Gomez] is concerned, to perform any kind of physical labor or employment which would require effort on his part." The orthopedic surgeon reported that Gomez "has a large functional deficit which is not supported by physical examination * * *." The internist reported "from a medical standpoint, I cannot find any reason why he should not be able to work due to his back pain." Concerning Gomez' diabetes, the internist reported that the diabetes, in itself, would not be disabling if Gomez would take "some personal interest in the control," but that Gomez would not buy insulin needles, and was not taking his medication because he had not been supplied with free needles. The internist pointed out that Gomez was purchasing cigarettes and the needles could have been purchased with the money spent on cigarettes.

The foregoing shows that the *eligibility* issue in this case is far different than in *Goldberg v. Kelly, supra.* In *Goldberg, supra,* one of the welfare recipients alleged that she was in danger of having AFDC benefits terminated "for failure to cooperate * * * in suing her estranged husband." Another welfare recipient alleged his "Home Relief" benefits "were terminated because he refused to accept counseling and rehabilitation for drug addiction." The factual questions of eligibility in *Goldberg, supra,* involved far more than the question of eligibility in this case; here, the question was whether Gomez was disabled from working and this was essentially a medical question. *Mathews v. Eldridge, supra,* points out that a medical assessment of a person's physical or mental condition "is a more sharply focused and easily documented decision than the typical determination of welfare entitlement." *Mathews v. Eldridge, supra,* is the applicable law, not *Goldberg v. Kelly, supra.*

*Mathews v. Eldridge, supra,* points out that the decision to discontinue disability benefits depends, in most cases, on medical reports of physician specialists, that only in a few cases will credibility or veracity be a factor in the ultimate disability assessment. That credibility may be a minimal factor in disability determination is illustrated in this case; Gomez says he cannot work, the specialists agree that Gomez believes he cannot work. The hearing officer heard Gomez testifying that he could not work; a requirement that the hearing officer also see Gomez testify that he cannot work would impose the rigidities of judicial procedure

on what is supposed to be an informal proceeding.

Even *Goldberg, supra,* agreed "that the pre-termination hearing need not take the form of a judicial or quasi-judicial trial", and *Goldberg, supra,* stands alone in regard to pre-termination due process. *See Mathews v. Eldridge, supra.*

*Mathews, supra,* points out that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions. The potential value of an evidentiary hearing, or even oral presentation to the decisionmaker, is substantially less in this context [of a disability determination] than in Goldberg." Here, however, Gomez had an evidentiary hearing at which he made an oral presentation to the hearing officer; Gomez received more than *Mathews, supra,* requires. Gomez was not deprived of due process because the termination hearing was conducted by telephone. The majority reach a contrary result, relying on cases only marginally supportive. Most of the cases relied on by the majority: (a) were concerned with a change in the hearing officer during the course of the hearing, and (b) consider demeanor as a part of the constitutional right to confrontation.

Thus, I dissent.