**Richard STERLING, D.M.D., Local 25 Dental, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 85–535.**

District of Columbia Court of Appeals.

Argued June 3, 1986.
Decided Aug. 13, 1986.

John Hogrogian, Washington, D.C., with whom Sonya D. Steele was on the brief, for petitioner.

Michael A. Milwee, Washington, D.C., for respondent.

Before PRYOR, Chief Judge, BELSON, Associate Judge, and GALLAGHER, Senior Judge.

BELSON, Associate Judge:

This case presents the question of whether, consistent with due process of law, telephone hearings may be conducted to resolve interstate unemployment compensation claims. We hold that telephone hearings are a permissible means of resolving such claims, but that under the circumstances of this case, the petitioner, Richard Sterling, D.M.D., was denied due process.

Petitioner discharged claimant Curlyn Henderson from her job as a dental assistant on November 7, 1984. Henderson filed an interstate claim for unemployment compensation from Maryland. On November 21, 1984, respondent, the District of Columbia Department of Employment Services (DOES), notified Henderson that she was ineligible for benefits because she had been discharged for misconduct within the meaning of D.C.Code § 46–111(b) (1985 Supp.). Henderson appealed that determination, and a telephone hearing was scheduled for February 11, 1985, at 9:45 a.m. Sterling concedes he received notice of the hearing, and does not dispute that he received instructions from DOES on how to participate in the telephone hearing.

At the appointed time, a DOES appeals examiner telephoned Sterling's office, asked to speak to the current office manager, and identified himself by name and as an appeals examiner "for the District Unemployment Compensation Board." [1] The receptionist asked the appeals examiner to hold on the line, and he complied. A few minutes later, the receptionist returned to the line and informed the appeals examiner that the office manager was "busy right now." The receptionist immediately started to ask a question by saying "Do you want—," but the appeals examiner cut her off without allowing her to finish her question, and terminated the conversation. At no time during the telephone call did the appeals examiner state his purpose in calling. The appeals examiner proceeded to conduct the hearing, during which claimant's denial of misconduct went unrebutted.

The appeals examiner reversed the claims deputy's determination that Henderson was ineligible for benefits. The examiner noted that Sterling had failed to participate in the telephone hearing, and consequently had failed to carry his burden of proving that Henderson had committed misconduct. DCRR § 4613.2, 28 D.C.Reg. 4978 (1981); *Hawkins v. District Unemployment Compensation Board,* 381 A.2d 619, 622 (D.C.1977). The Office of Appeals and Review affirmed the decision of the appeals examiner. It is from this final determination that petitioner appeals.

Petitioner challenges the adverse final decision reached by DOES on two grounds. First, petitioner contends that the telephone hearing process for resolving interstate unemployment compensation claims is, *per se*, a violation of due process of law. Second, petitioner argues that, at least under the peculiar circumstances of this case, he was denied due process of law. We agree with petitioner's second argument, reverse, and remand for a new hearing in accord with this opinion.

Petitioner's first contention, that telephone hearings are an inherently unconstitutional method for resolving interstate unemployment compensation cases, need not long detain us. It cannot be questioned that the due process clause is applicable where, as here, a property interest is at stake. The only issue is what process is due. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) outlines three factors to be balanced in determining whether a given procedure passes muster under due process analysis:

---

1. The appeals examiner's name was not included, understandably, in the hearing notice DOES mailed to Sterling. The degree, if any, to which the appeals examiner's mistaken reference to the District Unemployment Compensation Board (DUCB) rather than DOES, the successor to DUCB, contributed to confusion in responding to the appeals examiner's telephone call cannot be determined from the record.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

We agree with petitioner that the private interest at stake is substantial. We disagree, however, with petitioner's contention that abolition of telephone hearings would materially reduce the risk of an erroneous deprivation. Indeed, we are inclined to the view that the elimination of telephone hearings might *increase* the risk of error because fewer people might be able to participate in hearings, and because, overall, parties' opportunities to confront each other contemporaneously might be curtailed. In saying this, we are aware that the quality of confrontation is diminished when the clash of the parties is by telephone rather than in person. Finally, we believe that telephone hearings are a reasonable means of conserving fiscal and administrative resources. In summary, our balancing of the *Mathews* factors leads us to conclude that petitioner fails in his broad due process challenge to the practice of holding telephone hearings on interstate claims.[2]

We base our decision to reverse on the manner in which this particular telephone hearing was conducted. The appeals examiner's failure to inform petitioner's receptionist of the purpose of his call significantly compromised petitioner's opportunity to be heard because it seriously and unnecessarily increased the likelihood that petitioner would not be alerted to the fact that the hearing was about to occur. The appeals examiner further deprived petitioner of an opportunity to be heard by cutting off petitioner's receptionist in the middle of a question and then abruptly terminating the telephone call. Because the appeals examiner cut off the receptionist, we will never know what she was poised to ask. One possibility is that she was preparing to request that the appeals examiner state the purpose of his call, and that the appeals examiner's response might have led her to put him through to the office manager. What we do know is that petitioner was quite literally deprived of an opportunity to be heard when the receptionist was cut off in the middle of a question.

It is well settled that, at a minimum, due process requires an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The opportu-

---

2. We are bolstered in our conclusion by the fact that several other courts have reached the same conclusion in similar situations. *See Babcock v. Employment Division*, 72 Or.App. 486, 696 P.2d 19, 21–22 (1985) (unemployment compensation case; court held that telephone hearings withstood *Matthews* due process analysis); *Greenberg v. Simms Merchant Police Service*, 410 So.2d 566, 567 (Fla.Dist.Ct.App.1982) (unemployment compensation case; court noted that a telephone conference affords the decisionmaker a "far superior" opportunity to observe demeanor than "a cold, written record"); *State Ex Rel. Human Services Dept. v. Gomez*, 99 N.M. 261, 657 P.2d 117, 118 (1982) (welfare benefits case; telephonic hearings upheld against due process challenge); *Casey v. O'Bannon*, 536 F.Supp. 350 (E.D.Pa.1982) (welfare benefits case; court held that telephone hearings withstood *Mathews* due process analysis). *See also* Corsi, Rosenfeld, Fowler, Newcomer, Niekerk, and Bell, *Major Findings of the New Mexico Experiment of Teleconferenced Administrative Fair Hearings*, 38 U. Miami L.Rev. 647 (1984) (four-year study of teleconferencing in unemployment and welfare contexts yielded conclusion that teleconferencing allowed hearing examiners to gather necessary information, satisfied parties to a degree comparable to in-person hearings, and saved money).

We decline to follow dictum in *Simmons v. District Unemployment Compensation Board*, 292 A.2d 797, 799–800 & n. 4 (D.C.1972), suggesting that visual as well as aural observation of witnesses' demeanor might be required for a hearing to survive a due process challenge. We are satisfied that telephone hearings afford appeals examiners an adequate opportunity to gauge the credibility of witnesses in unemployment compensation cases. Moreover, we note that *Simmons* preceded *Mathews* and the due process balancing test it announced.

nity to be heard is a right also recognized in D.C. Code § 1–1509(b) (1981), which guarantees the right to present evidence and argument in contested cases. Moreover, DCRR § 4608.1, 28 D.C. Reg. 4973 (1981), mandates that "[a]ll hearings before a hearing examiner shall be conducted so as to ensure the protection of the substantial rights of the parties." In view of the appeals examiner's failure to state his purpose and his cutting off of petitioner's receptionist in the middle of a question, we hold that petitioner was denied an opportunity to be heard, and therefore was denied due process of law.[3]

*Reversed and remanded for a new hearing.*

3. DOES should consider issuing detailed instructions to examiners on how to conduct telephone hearings, with specific reference to the need to state a purpose when calling to initiate a hearing. Furthermore, it would be advisable for DOES to remind its examiners to be responsive, rather than resistant, to questions from the recipients of such calls.