Anne W. MURPHY, in her official capacity as Secretary of the Indiana Family and Social Services Administration, and Patricia Casanova, in her official capacity as Director of the Office of Medicaid Policy and Planning of the Indiana Family and Social Services Administration, Appellants/Defendants,

v.

Paul TERRELL, on behalf of himself and a Class of those similarly situated, Appellees/Plaintiffs.

No. 49A04–1003–PL–198.

Court of Appeals of Indiana.

Dec. 16, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants Anne Murphy and Patricia Casanova.

Gavin M. Rose, ACLU of Indiana, Jacquelyn Bowie Suess, Indianapolis, IN, Attorneys for Appellees Paul Terrell, on behalf of himself and a Class of those similarly situated.

## OPINION

BRADFORD, Judge.

Appellants/Defendants Anne W. Murphy, in her official capacity as Secretary of the Indiana Family and Social Services Administration and Patricia Casanova, in her official capacity as the Director of the Office of Medicaid Policy and Planning of the Indiana Family and Social Services Administration (collectively referred to as "the State") appeal the trial court's order granting summary judgment in favor of Appellee/Plaintiff Paul Terrell, on behalf of himself and a Class of those similarly situated (collectively referred to as "the Class"). Concluding that under the facts and circumstances presented in the instant matter, unsuccessful applicants for Medicaid disability benefits do not have a constitutional right to an in-person administrative hearing, we reverse and remand this matter for the entry of summary judgment in favor of the State.

## FACTS AND PROCEDURAL HISTORY[1]

**A. Background Information about the Hearing Procedures for Appeals by Unsuccessful Applicants for Medicaid Disability Benefits**

The Family and Social Services Administration ("FSSA") is the state agency re-

sponsible for the administration of social services in Indiana, including the Medicaid program. The Hearings and Appeals section of the FSSA processes appeals filed by and conducts hearings for applicants who have been denied Medicaid disability benefits.

At some point, the State entered into a contract with International Business Machines ("IBM"), for which Affiliated Computer Services, Inc. ("ACS") is a subcontractor, to modernize and administer certain aspects of FSSA's social services programs, including the Medicaid program. As of August 11, 2009, the modernization project developed by IBM had been introduced in fifty-nine counties (collectively referred to as the "modernized counties"). In the modernized counties, an ACS employee represents the State during the eligibility stage of FSSA's agency appeals process, including Medicaid disability appeals.

On January 7, 2009, FSSA began conducting appeal hearings, including those related to Medicaid disability appeals, telephonically in the modernized counties. The default procedure was that the State, through its ACS representative, and the unsuccessful applicant, along with any representatives or witnesses for the unsuccessful applicant, would appear telephonically for the hearing. The Administrative Law Judge ("ALJ") would likewise preside over the hearing telephonically. During the telephonic hearings, as in in-person hearings, unsuccessful applicants were permitted under Indiana regulations to be represented by counsel, to present evidence, and to cross-examine witnesses. All documentary evidence was exchanged

---

1. We held oral argument in this matter on October 26, 2010, and wish to commend counsel on the quality of their oral advocacy.

and tendered to the ALJ before the telephonic hearing.

FSSA sent notices to each of the unsuccessful applicants containing information relating to the date and time of their scheduled hearing as well as the toll-free number which the unsuccessful applicants were to use to call into their hearing. These notices also contained information informing the unsuccessful applicants of their ability to request and secure an in-person hearing rather than a telephonic hearing. If requested, in-person hearings were conducted in the county where the unsuccessful applicant resides, with the State's representative, the ALJ, and the unsuccessful applicant in the same room. This process requires the State's representative and the ALJ traveling to the unsuccessful applicant's county of residence. The director of the FSSA Hearings and Appeal section averred that he was not aware of any instance in which an unsuccessful applicant who requested an in-person hearing was not afforded one.

Many appeals, whether the hearings would be telephonic or in-person, are resolved before the scheduled hearing for reasons such as the unsuccessful applicant supplying additional information and being awarded benefits. It is the unsuccessful applicant's responsibility to notify the Hearings and Appeals section of the FSSA if the unsuccessful applicant wishes to withdraw his or her appeal. However, the director of the Hearings and Appeals section averred that his section is often not provided with sufficient notice of an unsuccessful applicant's decision to withdraw an appeal, and that in many instances, his section is not informed at all, and the unsuccessful applicant merely fails to appear for the scheduled hearing.

By scheduling in-person hearings, FSSA is able to schedule numerous hearing at the same time, but must require the ALJ and the State's representative to travel to the unsuccessful applicant's county of residence. By scheduling telephonic hearings, during which the participants call into a virtual hearing room, FSSA is able to schedule only one hearing at a time, and need not require the ALJ or the State's representative to travel to the unsuccessful applicant's county of residence.

As of October 1, 2009, FSSA, in its ongoing and continuing effort to improve its social services programs, no longer employs or conducts purely telephonic hearings for appeals, including Medicaid disability appeals, but rather conducts hybrid hearings which contain features of both telephonic and in-person hearings. The hybrid hearings entail the unsuccessful applicant and ALJ being in the same room, with the State's representative appearing telephonically. Participants in hybrid hearings continue to exchange evidence prior to the scheduled hearings, but unsuccessful applicants are permitted to introduce additional evidence during the hearing. The notices sent to unsuccessful applicants for Medicaid disability benefits regarding the appeals process have changed to reflect FSSA's decision to employ hybrid hearings rather than telephonic hearings.

## B. Procedural History Relating to the Instant Matter

On September 19, 2008, the Class filed a Second Amended Verified Class Action Complaint for Declaratory and Injunctive Relief against the State. The trial court also approved the Stipulation of the Parties to Certification of the Cause as a Class Action on that same day. The Class was defined as follows:

> Any and all Medicaid disability applicants or recipients who have been or will be denied Medicaid for the Disabled (MA D) and/or terminated from MA D, and who timely appealed, are timely ap-

pealing, or will timely appeal that decision, and who have had or will have a telephonic appeal hearing scheduled unless they specifically request an in-person hearing.

Appellant's App. pp. 441–42. The trial court further divided the Class into two sub-classes which were dependent upon the specific form of the notices sent to the unsuccessful applicants described above.

On May 29, 2009, the Class filed a Motion for Summary Judgment and supporting memorandum of law. The State filed a consolidated brief in opposition to the Class's motion for summary judgment and filed a Cross–Motion for Summary Judgment and supporting memorandum of law on August 14, 2009. The trial court conducted a hearing on the parties' motions for summary judgment on August 28, 2009. The parties subsequently filed an Agreed Supplemental Designation of Evidence and the corresponding exhibits. The trial court issued an order on March 1, 2010, granting the Class's motion for summary judgment and denying the State's motion for summary judgment. The State now appeals.

## DISCUSSION AND DECISION

### A. Standard of Review

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Shelter Ins. Co. v. Woolems,* 759 N.E.2d 1151, 1153 (Ind. Ct.App.2001), *trans. denied.* Summary judgment is appropriate where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). All designated evidence must be construed liberally and any doubt resolved in favor of the nonmoving party. *Woolems,* 759 N.E.2d at

1153. Summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting material inferences. *Guzorek,* 690 N.E.2d at 667. Summary judgment may not be used as a procedural device to avoid a trial on claims that are perceived to be weak. *Id.*

On appeal, we review a summary judgment order de novo and must determine whether the designated evidence before the trial court presents a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Bules v. Marshall County,* 920 N.E.2d 247, 250 (Ind.2010). Although the nonmoving party has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied its day in court. *McSwane v. Bloomington Hosp. and Healthcare Sys.,* 916 N.E.2d 906, 909–10 (Ind.2009) (quotation omitted); *Guzorek,* 690 N.E.2d at 667. We may not reverse the entry of summary judgment on the ground that a genuine issue of material fact exists unless the material fact and the evidence relevant thereto were designated specifically to the trial court. *Woolems,* 759 N.E.2d at 1154. Furthermore, we will sustain the trial court's decision to grant a motion for summary judgment if it is sustainable by any theory or basis found in the record. *Id.*

### B. Whether Unsuccessful Applicants for Medicaid Disability Benefits Have a Constitutional Right to an In–Person Administrative Hearing

On appeal, the State contends that the trial court erred in granting summary judgment in favor of the Class because unsuccessful applicants for Medicaid disability benefits who appeal from the denial of their eligibility to receive Medicaid ben-

efits do not have a constitutional right to an in-person administrative hearing.

## 1. Applicable Law

The Secretary of the FSSA is the ultimate authority for the state Medicaid program. *See* Ind.Code § 12–8–6–6 (2010). Indiana Code sections 12–8–6–5 (2010) and 12–8–6–6 provide the Secretary with the power to adopt rules and procedures relating to administrative review of an agency action regarding Medicaid disability benefits so long as the rules and procedures pass constitutional muster under the due process clause.

The Code of Federal Regulations provides that a state's hearing system for determinations relating to Medicaid eligibility or benefits "must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)." 42 C.F.R. § 431.205(d). In *Goldberg*, the U.S. Supreme Court considered the applicable due process requirements for determinations to terminate financial aid payments under a federally-assisted New York aid program for families with dependent children. 397 U.S. at 256, 90 S.Ct. 1011. With respect to the applicable due process requirements, the Supreme Court held as follows:

> The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner. In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.

*Id.* at 267–68, 90 S.Ct. 1011 (quotations omitted). The Supreme Court also held that the opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard, that the individual be allowed to be represented by counsel, if he so chooses, and that the decision maker's conclusion regarding eligibility rest solely on the legal rules and evidence adduced at the hearing. *Id.* at 268–71, 90 S.Ct. 1011. However, hearings need not take the form of a judicial or quasi-judicial trial. *Id.* at 266, 90 S.Ct. 1011.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court addressed due process considerations relating to the termination of Social Security disability benefits. The Supreme Court, noting that "the interest of an individual in continued receipt of [Social Security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment," stated that "[t]his Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." 424 U.S. at 332–33, 96 S.Ct. 893. The Supreme Court stated that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands, *Id.* at 334, 96 S.Ct. 893 and held as follows:

> Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedur-

al safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334–35, 96 S.Ct. 893 (citations omitted).

### 2. Analysis

■ The State contends that unsuccessful applicants for Medicaid disability benefits who appeal from the denial of their eligibility to receive Medicaid benefits do not have a constitutional right to an in-person administrative hearing. In support, the State points to three cases which appear to affirm the use of telephonic hearings. *See Casey v. O'Bannon*, 536 F.Supp. 350 (E.D.Pa.1982) (concluding that telephonic hearings provide rejected applicants for public assistance with sufficient procedural safeguards to pass constitutional muster under the due process clause); *Gray Panthers v. Schweiker*, 652 F.2d 146 (D.C.Cir.1980) (concluding that some form of informal oral hearing was required to pass constitutional muster under the due process clause for procedures for resolving disputes concerning Medicare benefits of less than $100); and *State ex rel Human Servs. Dept. v. Gomez*, 99 N.M. 261, 657 P.2d 117 (1982) (concluding that telephonic hearings provide rejected applicants for public assistance with sufficient procedural safeguards to pass constitutional muster under the due process clause). Conversely, the Class contends that unsuccessful applicants for Medicaid disability benefits who appeal from the denial of their eligibility to receive Medicaid benefits do have a constitutional right to an in-person administrative hearing. The Class, however, does not point to any authority supporting its contention.

The question before this court is whether a telephonic hearing affords the rejected applicants with the opportunity to be heard in a meaningful manner. *See Goldberg*, 397 U.S. at 267–68, 90 S.Ct. 1011 (providing that the fundamental requisite of due process is the opportunity to be heard in a meaningful manner). The parties agree that this court should utilize the balancing test set forth by the United States Supreme Court in *Mathews* to determine whether unsuccessful applicants for Medicaid disability benefits have a constitutional right to an in-person administrative hearing or whether a telephonic hearing provides the applicant with sufficient procedural safeguards to pass constitutional muster under the due process clause.

### a. Private Interest

■ The *Mathews* balancing test states that this court should first consider the private interest, *i.e.*, the interest of the rejected applicants, that will be affected by the official action denying them disability benefits. *See Mathews*, 424 U.S. at 334–35, 96 S.Ct. 893. With respect to this factor, the district court in *Casey* noted that the accessibility of assistance programs, by definition, involve the means to obtain food, clothing, housing and medical care, and, thus, is an important factor that weighed in favor of the rejected applicants. 536 F.Supp. at 353.

Here, the trial court found and both parties acknowledge that the members of the Class unquestionably have a substantial private interest in decisions regarding the status of their application for disability benefits. We agree and conclude that this factor undoubtedly weighs in favor of the Class.

### b. Governmental Interest

■ The next factor in the *Mathews* balancing test is the government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See Mathews,* 424 U.S. at 334–35, 96 S.Ct. 893. With respect to the governmental interest at issue, the district court in *Casey* noted that "due process does not shackle the government's ability to prevent the drain of fiscal and administrative resources" and that "governments can enact procedures for prompt pre-termination hearings by skillful use of personnel and facilities." 536 F.Supp. at 355 (citations omitted). The district court further noted that "in weighing the government's interest, substantial weight must be given to good-faith judgments of the individual charged with the Administration of programs and procedures that they have provided to assure fair consideration of the claims of individuals." *Id.* (citation omitted). The district court found that the policy of allowing telephonic hearings would help the governmental agency to effectively deal with rising costs in wake of declining governmental revenues. *Id.*

Here, the trial court noted that the record indicated that processing times in counties employing the telephonic hearing system and counties not employing this system were virtually identical. The State argues that it has a great interest in conducting telephonic hearings and that its use of telephonic hearings in Medicaid administrative adjudications is not unique. For its part, the Class argues that any governmental interest in favor of telephonic hearings is either minimal or nonexistent because the system was introduced by a private contractor working with the State to streamline the Medicaid claims process. The evidence demonstrates that the use of telephonic hearings allows the State to better manage public funds and to utilize decreasing resources efficiently. In light of the persuasive opinion in *Casey* regarding the State's interest in efficient utilization of decreasing public funds, we conclude that this factor weighs in favor of the State.

### c. Erroneous Deprivation

■ The final factor set forth in the *Mathews* balancing test is whether there is a risk that the individual would suffer an erroneous deprivation of the individual's private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *See Mathews,* 424 U.S. at 334–35, 96 S.Ct. 893. With respect to the erroneous deprivation factor, the district court in *Casey* acknowledged the rejected applicants' claim that telephonic hearings subjected them to a risk for erroneous deprivation of because the examiner would not be able to conduct a visual examination of the applicant during the hearing which could allow the examiner to judge the applicant's credibility. 536 F.Supp. at 353. Noting that hearing examiners could effectively judge credibility over the phone by noting vocal responses, pauses, levels of irritation and other factors, the district court concluded that the rejected applicants "failed to carry the heavy burden of convincing us that face-to-face hearings are required in the situations involved in this case." *Id.* In *Gray Panthers,* the Court of Appeals for the D.C. Circuit found that there was a risk of erroneous deprivation of an individual's rights when there was no oral procedure available, but found that even an informal oral hearing would pass constitutional muster. 652 F.2d at 171–73. In *Gomez,* the New Mexico Supreme Court rejected the applicant's argument that there was a high risk that he would suffer an erroneous deprivation of his private interest because the hearing examiner would not be able to judge his demeanor during a telephonic hearing. 657 P.2d at 124. In rejecting the applicant's argument, the Court held that in

New Mexico, "demeanor" is not an aspect of the constitutional right of confrontation, and noted that the United States Supreme Court has never held that "demeanor" is an aspect of the constitutional right of confrontation. *Id.*

Here, the trial court found that the Class failed to provide enough empirical evidence to approximate the risk of deprivation, or to what extent the individuals would be erroneously deprived by the telephonic hearings. The State argued that nothing in the record suggested that the members of the Class were at a risk to suffer an erroneous deprivation of their private interest, while the Class argued that there was a high risk that its members would suffer an erroneous deprivation of their private interest during a telephonic hearing because the ALJ would not be able to judge their credibility by observing their mannerisms or demeanor during the hearing. However, the Class provided only the opinion testimony of a few individuals, and no empirical evidence in support of its claim that its members suffered from a high risk of an erroneous deprivation. In light of the lack of empirical evidence in the record of this case regarding the potential for an erroneous deprivation of the Class member's private interest in acquiring Medicaid disability benefits, coupled with the persuasive opinions in both *Casey* and *Gomez* explicitly rejecting the Class's argument, we conclude that, under these circumstances, this factor weighs in favor of the State.[2]

Upon considering the relevant federal authorities together with the facts and circumstances presented in the instant matter, we conclude that telephonic hearings afford unsuccessful applicants with the opportunity to be heard in a reasonable manner, and, as a result, unsuccessful applicants for Medicaid disability benefits do not have a constitutional right to an in-person administrative hearing.[3] *See Goldberg,* 397 U.S. at 267–68, 90 S.Ct. 1011. Accordingly, we further conclude that the trial court erroneously granted summary judgment in favor of the Class on this ground and we reverse and remand this matter for the entry of summary judgment in favor of the State.

The judgment of the trial court is reversed and the matter is remanded with instructions.

DARDEN, J., and BROWN, J., concur.

---

2. To the extent that the trial court based its determination on 405 IAC § 1.1–1–3(b) which provides that "[a]pplicant and recipient appeal hearings shall be conducted at a reasonable time, place, and date," we are unconvinced that a telephonic hearing does not satisfy the reasonable "place" requirement set forth in 405 IAC § 1.1–1–3(b), especially in light of the requirement that an ALJ conduct the hearing in an informal manner without recourse to the technical common law rules of evidence. *See* 405 IAC 1.1–1–5.

3. While we conclude under the facts and circumstances presented in the instant matter that telephonic hearings afford unsuccessful applicants for Medicaid disability benefits with adequate due process protections, we note that the State, in adopting a system providing unsuccessful applicants with hybrid hearings, now affords unsuccessful applicants with arguably better due process protections.