**Gary L. STIVER, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 7:CV94–5012.

United States District Court,
D. Nebraska.

March 21, 1995.

James E. Schneider, North Platte, NE, for plaintiff.

Paul Madgett, Asst. U.S. Atty., Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Wrongly believing he had to travel well over 200 miles with a bad back to attend a social security hearing, Gary L. Stiver (Stiver), who does not have a high-school diploma, waived his right to a hearing on his claim for social security benefits. He did so after receiving advice by telephone from a nonlawyer hired by an insurance company to represent him. Without hearing testimony, an administrative law judge (ALJ) found that Stiver's claims of pain were not credible and denied his request for benefits.

Stiver appeals to this court contending, among other things,[1] that his hearing waiver was invalid. Consequently, he seeks a remand to the Secretary for a redetermination of whether he is entitled to benefits. Agreeing with Stiver that his statutory and due process rights were violated because his waiver was not knowing, intelligent, or voluntary and finding that Stiver suffered prejudice as a result of the waiver, I shall grant Stiver's motion for summary judgment (Filing 13) and remand this case to the Secretary for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence six).

## I.

This unusual case comes to me upon an unusual record. The record includes the following: (1) the affidavit of Stiver (Filing 14); (2) Plaintiff's Index of Evidentiary Material (Filing 15), comprising the deposition of Kar-

en Tretter (Tretter) and attached exhibits; and (3) the customary administrative hearing record (Filing 6). The Secretary has not submitted any evidence in opposition to the motion for summary judgment save for the administrative record.

Briefly summarized, the facts material to the issue of waiver are these:

1. Stiver, a laborer who worked in heavy construction, does not have a high-school diploma. He herniated discs in his back and was treated surgically for these problems in 1987 and 1991.

2. Stiver allegedly became disabled because of a work-related injury that caused a herniated disk in 1991, and he stopped working as a result. His employer provided total disability insurance through North American Life Assurance Company (North American) for a period of 24 months, with benefits reduced by any benefits payable under social security. North American concluded that Stiver was "totally disabled" and began to pay him under the disability policy.

3. North American hired Allsup, Inc. (Allsup) to represent Stiver before the Secretary, and Allsup assigned Tretter, who is not a lawyer,[2] to represent Stiver.

4. Stiver accepted the representation of Allsup and Tretter because he thought the service was "free" and he "was without funds to employ an attorney." (Filing 14 ¶ 2.)

5. Based upon advice from Tretter over the telephone, Stiver signed a written waiver of his right to an oral hearing, (Filing 15, Ex. 6), and a written waiver of his right to appear in person before an ALJ. (*Id.*, Ex. 7.) Tretter sent these documents to the ALJ. The ALJ relied on the waiver documents without inquiry.

6. At the time he signed the waivers, Stiver lived in Sutherland, Nebraska, which is about 20 miles from North Platte, Nebras-

---

1. To the extent that Stiver raises other arguments for remand, such as the argument that his representative was incompetent, I find it unnecessary to reach those issues in light of my resolution of the waiver argument.

2. Nonlawyers may represent social security claimants before the Secretary. 20 C.F.R. § 404.1705(b) (1994).

ka, about 240 miles from Lincoln, Nebraska, and about 300 miles from Omaha, Nebraska.[3]

7. Social security ALJs conduct hearings on social security claims in North Platte, Nebraska, Omaha, Nebraska, and Lincoln, Nebraska.

8. Tretter, who was located in Illinois, never met Stiver.

9. Tretter knew Stiver lived in Sutherland, Nebraska, but erroneously believed Sutherland was "near Omaha." (Filing 16 Tretter Dep. at 20:4–6.)

10. Tretter had been to Omaha on numerous occasions to attend social security hearings, (*id.* at 30:6–9), but she did not know that ALJs conducted hearings on social security claims in North Platte, Nebraska. (*Id.* at 31:4–24; 32:1–21.)

11. Although Tretter claims to have told Stiver over the phone that he could have a "hearing in his area," she did not tell him he could have a hearing in North Platte, Nebraska. (*Id.* at 36:5–20; Filing 14 ¶ 4.)

12. Tretter testified that Stiver waived a hearing "for other reasons than transportation," but she acknowledged "that [transportation] may have been at issue as well." (Filing 16 Tretter Dep. at 37:1–6.)

13. Stiver swore that he was not told he could have a hearing in North Platte, Nebraska, that Tretter told him the hearing would be conducted in Omaha or Lincoln, Nebraska, that he did not want to travel to Omaha or Lincoln, Nebraska, for a hearing because to do so would require a long, painful car trip, and that had he known he could have a hearing in North Platte, Nebraska, he would not have waived his right to a hearing. (Filing 14 ¶¶ 4–6.)

14. Stiver swore he was never informed that he would not be represented in person at a hearing before an ALJ, (Filing 14 ¶ 8), although one of the waiver forms states "I want my case decided on the record." (Filing 14, Ex. B.)

15. The waiver was accomplished by execution and submission of form documents containing no indication of where hearings are normally held. (Filing 14, Exs. A, B.) The typed language in the forms was supplied by Allsup. (Filing 16 Tretter Dep. at 33:6–14; 34:1–35:2.)

16. In answer to a question concerning whether the forms were filled out using "standard form language," Tretter acknowledged, "This is standard language for these—for this type of situation." (*Id.* at 36:11–14.)

17. Tretter testified that she specifically discussed with Stiver the advantages and disadvantages of testifying, including that Stiver would have an "opportunity to present complaints of pain" if he appeared. Tretter stated that she agreed with Stiver's decision not to testify because it was her impression that one of his doctors had at one time released him to work and she was fearful that the ALJ would discover this fact if Stiver were questioned. (*Id.* at 39:19–24; 40:1–15.)

18. There was no hearing before an ALJ, Tretter and Stiver consequently attended no hearing, and the matter was resolved on the record submitted to the ALJ.

19. Briefly summarized, the medical evidence presented to the ALJ established, and the ALJ found, medically determinable impairments including a status post right L4–5 hemilaminectomy, lysis of adhesions, discectomy with free fat graft from the left buttock, with residual lower extremity symptoms and residual back symptoms, as evidenced by a report from Stiver's neurologist. (Filing 6 at 16, 123–27.) The neurologist noted that Stiver could ride in his car from "home to North Platte" with "no problems" but the ride "did cause some aching in his back." (*Id.* at 125.)

20. When one doctor released him for work at one point, Stiver returned to work but subsequently claimed to be unable to work due to severe pain. (*Id.* at 15, 128–29.) It was *after* this "return-to-work effort" that Stiver consulted the neurologist who conducted a functional capacity assessment that indi-

---

**3.** There are federal courthouses in Omaha, Lincoln, and North Platte, Nebraska, where federal courts (and federal agencies) regularly conduct business.

cated Stiver could not return to his prior work. (*Id.* at 123–28.)

21. While recognizing that Stiver had a "reasonably good work record," (*id.* at 14), the ALJ found that Stiver's claim that he was unable to do any work because of severe pain was not credible. (*Id.* at 20 ¶ 6.)

22. While the ALJ concluded that Stiver, who was then 49 years old, could not return to his past work because of medical impairments, (*id.* at 20 ¶¶ 3–4), the ALJ also concluded that Stiver was not "disabled" under the Social Security Act because he could do sedentary work (notwithstanding his claim of disabling pain). (*Id.* at 20 ¶ 8.)

23. The ALJ rendered his decision on September 23, 1993, (*id.* at 21), and thereafter Tretter caused an appeal to be taken to the Appeals Council. The Council denied the appeal in March, 1994. (*Id.* at 4–5.) Stiver retained counsel, and this suit was filed in a timely fashion. The judge to whom this case was previously assigned permitted Stiver's counsel to depose Tretter over the objections of the Secretary. (Filing 11.)

24. Although it was not submitted to the ALJ or the Appeals Council, Allsup obtained a report concerning Stiver from an orthopedic surgeon, dated December 6, 1993, which stated in part:

> The patient is clearly unable to perform the material and substantial duties of his occupation, and apparently he has no other education, training or experience to seek gainful employment in other lines of work. Accordingly, he would be considered unable to perform gainful employment in other areas as well.

(Filing 14 ¶ 13 & Ex. C.)

## II.

■ Both the Social Security Act and the Due Process Clause of the Fifth Amendment require that a claimant receive an opportunity to personally appear at a hearing before a claim for disability benefits is denied. *Stoner v. Secretary of Health and Human Servs.*, 837 F.2d 759, 761 (6th Cir.1988) (citing 42 U.S.C. § 405(b) and *Parker v. Califano*, 644 F.2d 1199 (6th Cir.1981), and holding that claimant was denied his statutory and due

process rights when hearing was conducted in his absence, although claimant's lawyer attended, where it was impossible for claimant to attend as claimant was recuperating from surgery).

■ Moreover, while this right to a personal appearance may be waived, any such waiver must be both "voluntary and knowing." *Id.* at 761. As a result, even if one submits a written waiver that complies with the requirements of the Social Security Administration, such compliance "does not necessarily constitute a valid waiver if surrounding circumstances suggest another interpretation," such as that the waiver was not knowing or intelligent. *Madden v. Heckler*, 1986 WL 2118 *1 (N.D.Ill.1986) (citations omitted).

As a consequence, the courts have held that remand to the Secretary is appropriate under 42 U.S.C. § 405(g) where (1) a claimant's waiver of a hearing is not knowing, intelligent, or voluntary, and (2) prejudice results therefrom. *See, e.g., Stoner*, 837 F.2d at 761 (where no clear waiver by claimant even though counsel appeared for claimant, remand was required because claim of disabling pain required ALJ to make observations of claimant and ask claimant questions); *Thomas v. Schweiker*, 557 F.Supp. 580, 582 (S.D.Ohio 1983) (in view of fact that applicant was confused and new evidence was presented that was highly relevant, remand was justified notwithstanding written waiver).

■ Applying the foregoing law to the facts of this case, I find and conclude that Stiver's waiver of hearing was not knowing, intelligent, or voluntary, and that prejudice resulted. I come to this conclusion for three reasons.

First, the evidence persuades me that Stiver's waiver was neither knowing nor intelligent. He did not know the true facts and therefore could not intelligently assess the risks and rewards of waiving a hearing.

Stiver wrongly believed he had to travel to Omaha or Lincoln, Nebraska, if he wanted a hearing. He was not told he had a right to a hearing in North Platte, Nebraska, which was near his home. Stiver has sworn, and there is no evidence to the contrary, that he

waived a hearing because of his unwillingness to travel long distances due to his painful back problem. He has also sworn, and again there is no evidence to the contrary, that had he known he was entitled to a hearing in North Platte, Nebraska, he would not have waived his right to a hearing.

In this regard, I am particularly persuaded by the following evidence:

(1) Tretter admitted she did not tell Stiver he had a right to a hearing in North Platte, Nebraska, and indeed she did not know that hearings were conducted in North Platte.

(2) Tretter was confused about where Stiver actually lived, wrongly believing he lived "near Omaha, Nebraska," and any advice she gave Stiver about a hearing in his "area" was likely to have been quite confusing, particularly coming as it did over the telephone.

(3) Tretter admitted that Stiver might not have requested a hearing in part because of the "transportation" issue.

(4) The waiver documents, which Stiver did not prepare, did not advise Stiver that he had a right to a hearing in North Platte, Nebraska, near his home, as opposed to being required to travel well over 200 hundred miles to Lincoln or Omaha, Nebraska, if he wanted a hearing.

Second, given the undisputed fact that Stiver has a serious back problem that necessitated two surgeries and that medical records reveal that even a ride from his home to North Platte caused him pain, I find and conclude that Stiver's waiver was not voluntary. Rather, I find that the waiver was induced by Stiver's fear, caused in significant part by the lack of clear advice from Tretter, that he would have to endure a long, painful trip if he wanted a hearing.

[5] Third, Stiver was prejudiced by waiving his right to a hearing. The issue of disabling pain and Stiver's lack of credibility was the focus of the decision to deny him benefits. The ALJ lacked the opportunity to observe and question Stiver because of the waiver. In a similar vein, Stiver lacked the opportunity to personally convince the ALJ of his sincerity about disabling pain because of his erroneous belief that he would have to drive well over 200 miles to do so. Where disabling pain is a significant issue at a social security hearing, "it is particularly important for the ALJ to be able to make observations of a claimant and to question the claimant directly." *Stoner*, 837 F.2d at 761. Such is certainly the case here.

### III.

I find and conclude that new evidence material to this case has been discovered that was not considered before and for which there is good cause for the failure to incorporate such evidence into the record of the prior proceeding. 42 U.S.C. § 405(g) (sentence six). The "new evidence" is Stiver's live testimony, and the "good cause" is his invalid waiver and the resulting prejudice.

Accordingly,

IT IS ORDERED that:

(1) The motion for summary judgment (Filing 13) is granted;

(2) Judgment shall be entered by separate document providing that "pursuant to 42 U.S.C. § 405(g) (sentence six), judgment is entered for Plaintiff and against Defendant, remanding this case to the Secretary for further proceedings."