# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2835

_____

United States of America

*Plaintiff - Appellee*

v.

Abdirahman Farah Mohamed

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 14, 2013
Filed: August 16, 2013

_____

Before RILEY, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Abdirahman Farah Mohamed of one count of food-stamp fraud in violation of 7 U.S.C. § 2024(b)(1), 7 C.F.R. § 278.2, and 18 U.S.C. § 2. Mohamed committed food-stamp fraud by giving cash back on a purchase with a U.S. Department of Agriculture ("USDA") Electronics Benefits Transfer ("EBT") food-stamp card. On appeal, Mohamed claims the introduction of a selective translation of a recording violated his Sixth Amendment confrontation right and Federal Rule of

Evidence 106, often referred to as the rule of completeness. Additionally, Mohamed argues the district court[1] erred in allowing a linguist to use a pseudonym at trial. We affirm.

I. Background

A. Sting Operation

In 2008, a confidential informant ("CI") began working with the Federal Bureau of Investigation ("FBI"). On February 22, 2009, federal and state law enforcement prepared for a sting of Omaha International Food Mart ("OIFM"). Law enforcement suspected OIFM was providing cash back on EBT card transactions, in violation of USDA regulations and Nebraska law. Law enforcement equipped the CI with a recording device, gave him an EBT card, instructed him to request cash back from the EBT card, and, if successful, wire the cash to his mother using a hawala[2] inside OIFM.

After law enforcement searched the CI's car and his person, the CI entered OIFM. Mohamed was working as the cashier. The CI approached Mohamed to purchase some items and also requested $100.00 cash back from his EBT card. Initially, Mohamed told the CI he would need to wait for another worker to conduct the cash-back transaction. The CI then left the store and contacted law enforcement, who instructed the CI to go back to OIFM and wait, which the CI did. Eventually, the CI asked Mohamed to conduct the cash-back transaction himself, and Mohamed

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

[2]Law enforcement testified at trial that a hawala is a type of wire-transfer business.

agreed to do so. The CI received the $100.00 and wired the money to his mother as instructed by law enforcement.

B. Pre-trial Motions

A federal grand jury indicted Mohamed with two counts of food stamp fraud—Count II and Count IV. Count II is for the transaction on February 22, 2009—described above—which is the only count relevant for purposes of this appeal. Before trial, Mohamed filed several motions regarding the evidence.

Mohamed filed a motion for a hearing to disqualify the translator. The government planned to introduce a translated transcript (hereinafter "Exhibit 7") of selected portions of a recording from the device the CI wore during the sting operation, as the CI and Mohamed were speaking in Somali. An FBI linguist who was to testify at trial regarding Exhibit 7 planned to use a pseudonym. In his motion, Mohamed argued that the linguist's anonymity made it "apparent that the interpreter is biased against the defendant and the defendant cannot meaningfully cross examine the interpreter's translation if the identity of said interpreter is withheld." The district court granted a hearing and, during the hearing, the government argued that the linguist wished to remain anonymous because he had a "genuine fear of retaliation of physical harm to him physically and/or his family that still is in the East Africa area." At the conclusion of the hearing, the district court granted Mohamed's motion, with the caveat that only defense counsel could learn the true name of the linguist. The linguist's real name could not be revealed at trial. The government also provided Mohamed with information regarding the linguist's training and experience.

Mohamed also filed a motion in limine, seeking to exclude Exhibit 7. Mohamed argued that the government must translate the entire recording, not just selected portions. The government had instructed the translator to summarize the

entire recording but only translate verbatim those portions relating to the food-stamp transaction. The district court denied the motion in limine. In doing so, the district court reminded Mohamed that it had granted a previous motion to continue trial because Mohamed stated more time was necessary to conduct his own translation of the recording.

### C. Evidence Presented at Trial

At trial, the government introduced evidence to provide background information on the food-stamp program. The USDA administers the food-stamp program. The state of Nebraska administers a related food-stamp program called the Supplemental Nutrition Assistance Program ("SNAP"). Under these programs, persons are provided with EBT cards—which recently replaced paper food stamps— to purchase food items. A USDA official testified at trial that OIFM was an authorized business to accept and redeem food stamps. Further, the official testified that OIFM would have received information and training materials on the food-stamp program, including materials explaining that an individual cannot receive cash back from an EBT card.

The CI testified regarding the sting operation at trial, providing the details described in Part I.A. While testifying, the CI identified Mohamed in the courtroom as the individual who gave him the cash back. The government also put into evidence an EBT receipt for the February 22, 2009 transaction. The receipt was from OIFM and for $126.98.

The government also put into evidence a DVD showing selective portions of the February 22, 2009 sting operation. This DVD was played before the jury. While the DVD played, the CI identified Mohamed on the tape as the individual who conducted the cash-back transaction. The CI also periodically described the conversation and the transaction while the DVD played before the jury.

Mohamed Hashi,[3] an FBI linguist who is proficient in Somali, testified at trial regarding Exhibit 7. Hashi's official position with the FBI was "quality control reviewer." Hashi testified that as a quality control reviewer, he reviewed the initial translator's translation for accuracy, but that he did not conduct the original translation. Once it was revealed that Hashi did not conduct the initial translation, defense counsel requested permission to question Hashi outside the presence of the jury. Once outside the presence of the jury, Hashi stated that he did not conduct the original translation, but stated that he listened to the entire original recording and verified the accuracy of the original translation. As the original translator did, Hashi translated only food-stamp related conversations. The court questioned Hashi as follows:

> THE COURT: All right. Mr. Hashi, your—it's your opinion that this is a correct—a correct and accurate verbatim transcript of—verbatim translation of the conversation that is written in this document; is that correct?
>
> THE WITNESS: It's my opinion that this is verbatim and accurate translation of—that was written in the product.
>
> THE COURT: Okay. All right. I'm going to overrule your objection. [Defense counsel], this is opinion—this is basically opinion testimony and if someone else reviews another work and adopts that opinion, then it's this witness's opinion. I didn't allow [the government] to go into anything about the other translator because the other translator's not here for you to cross-examine. This one is. And he shares the opinion of the original translation. I didn't want the government to bootstrap the translation of somebody that's not here because it adds credibility. And your objection really goes contrary to all of that. It's his opinion, the witness's opinion, he's expressed his opinion, and that's—and then you could cross-examina- —cross-examine him and then that's the end. So I'm overruling your objection.

---

[3]This is his pseudonym.

Defense counsel then cross-examined Hashi on his proficiency in Somali, including pointing out that Hashi was only proficient in one dialect of Somali. Defense counsel also questioned Hashi regarding the fact that he did not conduct the original translation. Finally, defense counsel questioned Hashi about sections of the recording that were not translated verbatim.

Special Agent Jason Johnson testified at trial regarding an interview with Mohamed. Special Agent Johnson interviewed Mohamed on June 23, 2009. During the interview, Mohamed stated that he had received training on the rules regarding EBT transactions and that he knew it was unlawful to give cash back on EBT transactions. Mohamed testified on his own behalf and again stated that he knew it was unlawful to give cash back on EBT card purchases. However, he denied giving the CI cash back.

The jury found Mohamed guilty of Count II; the jury acquitted Mohamed of Count IV.[4] Mohamed filed a timely motion for judgment notwithstanding the verdict, which the district court denied. The district court sentenced Mohamed to thirty days' imprisonment, with one year of supervised release, and a $100 special assessment and $100 of restitution. Mohamed timely appealed.

## II. Discussion

Mohamed challenges several of the district court's evidentiary rulings, which we review for abuse of discretion. United States v. Worthey, 716 F.3d 1107, 1114 (8th Cir. 2013). We will reverse "'only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'"

---

[4] The transcript was only relevant to Count II; the government did not present any audio or translation of an illegal transaction to support Count IV.

-6-

Chism v. CNH Am. LLC, 638 F.3d 637, 640 (8th Cir. 2011) (quoting United States v. Summage, 575 F.3d 864, 877 (8th Cir. 2009)). "However, if the ruling results in constitutional error, we must reverse unless the Government shows that the error was harmless beyond a reasonable doubt." United States v. Foreman, 588 F.3d 1159, 1163 (8th Cir. 2009).

A. Transcript

Mohamed claims that the district court erred in allowing Exhibit 7 into evidence for two reasons: (1) it violated his Sixth Amendment rights under the Confrontation Clause, and (2) it violated the rule of completeness. We address each argument in turn.

First, Mohamed argues that the introduction of Exhibit 7 violated his Sixth Amendment confrontation right. Specifically, Mohamed claims that the linguist who conducted the original translation—not Hashi—was required to testify and be subject to cross-examination for Exhibit 7 to be admitted.

We find it unnecessary to decide whether admitting Exhibit 7 into evidence without having the original translator testify regarding its contents violated the Confrontation Clause, because any alleged error was harmless beyond a reasonable doubt. See, e.g. United States v. Mueller, 661 F.3d 338, 348–51 (8th Cir. 2011) (declining to decide whether a Confrontation Clause violation occurred because any potential error was harmless). "A nonwaived [Confrontation Clause] violation is subject to a harmless error analysis, under which we assess whether the Constitutional violation was harmless beyond a reasonable doubt." United States v. Holmes, 620 F.3d 836, 844 (8th Cir. 2010). "Several factors are considered under this analysis: '(1) the importance of the witness's testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradicting testimony of the witness on material points; (4) the extent of

cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.'" Mueller, 661 F.3d at 350 (quoting Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999)).

Any error was harmless in this case because the other evidence was sufficient to prove guilty beyond a reasonable doubt, and Exhibit 7, along with Hashi's testimony, was cumulative evidence. To prove a violation of 7 U.S.C. § 2024(b)(1), the government must show that Mohamed "knowingly use[d], transfer[red], acquire[d], alter[ed], or possesse[d] benefits in any manner contrary to" the Food Stamp Act, 7 U.S.C. § 2024(b)(1), and that at the time knew he acted unlawfully, Liparota v. United States, 471 U.S. 419, 433 (1985). First, Mohamed admitted at trial that he knew giving cash back on EBT transactions was unlawful. He also admitted during an interview with Special Agent Johnson that he had received training on the rules relating to EBT transactions. Next, the CI testified at trial that he received cash back on an EBT transaction from Mohamed, identifying Mohamed in the recording and in court. The CI also described the recording while it was playing at trial, including his conversation with Mohamed. The government provided corroboration of the CI's testimony, specifically the receipt from the transaction. Considering the strength of the prosecution's case and the fact that Exhibit 7 is cumulative to the CI's first-hand account of the illegal transaction, any alleged Confrontation Clause violation was harmless.

Next, Mohamed claims that the district court erred in not excluding Exhibit 7 because it violated Federal Rule of Evidence 106. Rule 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "[T]he party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." United States v. King, 351 F.3d 859, 866 (8th

Cir. 2003) (internal quotation marks omitted). We recognize that "the district court has broad discretion to conduct the trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives to satisfy the rule of completeness reflected in Rule 106." United States v. Webber, 255 F.3d 523, 526 (8th Cir. 2001).

Mohamed failed to specify what portions of the recording the government should have translated. Instead, Mohamed argues that "leaving portions out of the short translation prevent[ed] the defense from eliminating any ambiguity that the transaction could have occurred when the translator left statements out." The district court's rejection of this argument was not abuse of discretion. The government provided Mohamed with a copy of the entire recording well before trial. In fact, the district court continued trial to give Mohamed more time to translate the recording.[5] Therefore, Mohamed had the opportunity to review the recording and determine what portions needed to be translated. As the district court informed Mohamed before trial, he had the opportunity to cross-examine Hashi as to why certain portions were or were not translated, thereby eliminating any potential ambiguity.

B. Use of Pseudonym

Mohamed also claims that the district court erred in allowing the FBI linguist who testified at trial to use the pseudonym "Mohamed Hashi" because it violated his rights under the Confrontation Clause. In support of this argument, Mohamed cites Smith v. Illinois, 390 U.S. 129 (1968). In Smith, the U.S. Supreme Court reversed a defendant's conviction, holding that the failure to require a testifying informant to disclose his true name and address violated the defendant's rights under the

_____

[5]At oral argument, defense counsel explained that she did not get an independent translator because she could not find a Somali translator. However, Mohamed speaks Somali and could have reviewed the recording for portions that needed to be translated.

Confrontation Clause.  Id. at 131–32.  However, this Court later qualified Smith, quoting the Seventh Circuit as follows:

> Smith does not per se require a new trial merely because the district court sustained an objection to a question seeking to elicit [the witness's] address.  Smith requires reversal only where the lack of a witness's name and address denies a defendant an opportunity to effectively cross -examine a witness. When this happens, a defendant is denied his Sixth Amendment right to confrontation. However, the initial question is whether the defendant was denied effective cross-examination.

United States v. Spector, 793 F.2d 932, 937 (8th Cir. 1986) (quoting United States v. Teller, 412 F.2d 374, 380 (7th Cir. 1969)).  Other circuits consider various factors when determining whether a witness's use of a pseudonym denied a defendant the opportunity to effectively cross-examine the witness.  These factors include whether the defendant was informed of the witness's real name before the witness testified, Siegfriedt v. Fair, 982 F.2d 14, 18 (1st Cir. 1992), and whether the defendant was able to cross-examine the witness on his or her background and/or credentials, Clark v. Ricketts, 958 F.2d 851, 854–55 (9th Cir. 1991).

In the current case, the linguist's use of a pseudonym did not deny Mohamed the opportunity to effectively conduct cross-examination.  The district court disclosed Hashi's real name to defense counsel, so defense counsel had the ability to investigate Hashi's background.  The government disclosed information on Hashi's qualifications and experience.  The district court also allowed defense counsel to cross-examine Hashi on his qualifications and experience, and defense counsel did so.  Therefore, no Confrontation Clause violation occurred.

C. Sufficiency of the Evidence

While it is not entirely clear from his brief, Mohamed appears to argue that insufficient evidence existed to support the jury's verdict as to Count II. We reject this claim because, as discussed in Part I.A, even excluding the transcript, overwhelming evidence existed to support the guilty verdict on Count II. See United States v. Vega, 676 F.3d 708, 721 (8th Cir. 2012) ("[W]e review a challenge to the sufficiency of the evidence deferentially and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks omitted)).

III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____