CONCLUSION

For the reasons stated above, we vacate the district court's May 8, 2014, resentencing order and we remand the cause with directions to reinstate the original sentences imposed by the district court ordering that the sentences for counts I and II be served consecutively and that the sentence for count III be served concurrently.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.

––––––––––––

MELANIE M., INDIVIDUALLY AND AS NEXT FRIEND OF
GAIGE M. ET AL., HER MINOR CHILDREN, APPELLANT,
V. KERRY T. WINTERER AND RYAN C. GILBRIDE,
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES
AS EMPLOYEES AND AGENTS OF THE STATE OF
NEBRASKA, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, AND THE STATE OF
NEBRASKA, DEPARTMENT OF HEALTH
AND HUMAN SERVICES, APPELLEES.
___ N.W.2d ___

Filed April 23, 2015.    No. S-14-538.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Administrative Law: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented which an appellate court decides independently of the decision made by the court below.

4. **Constitutional Law: Due Process.** The process required under the Due Process Clause of the 14th Amendment is that necessary to provide "fundamental fairness" under the particular facts of the case.

5. **Due Process.** There are three factors a court considers in resolving a procedural due process claim: first, the private interest that the official action will affect; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

6. **Evidence.** The importance of demeanor evidence depends on the role that credibility plays in a particular determination.

7. **Administrative Law.** Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.

8. ____. Regulations bind the agency that promulgated them just as they bind individual citizens, even if the adoption of the regulations was discretionary.

9. ____. An agency does not generally have the discretion to waive, suspend, or disregard a validly adopted rule.

10. ____. For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.

11. ____. In the absence of anything to the contrary, language in a rule or regulation is to be given its plain and ordinary meaning.

12. **Administrative Law: Appeal and Error.** A court accords deference to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent.

13. **Attorney Fees.** Generally, a party may recover attorney fees and expenses in a civil action only if provided for by statute or if a recognized and accepted uniform course of procedure allows the recovery of attorney fees.

14. **Federal Acts: Attorney Fees.** A plaintiff is a prevailing party under 42 U.S.C. § 1988 (2012) if the plaintiff obtains actual relief on the merits of his or her claim that alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

15. ____: ____. A plaintiff who obtains temporary injunctive relief is not a prevailing party under 42 U.S.C. § 1988 (2012) if the plaintiff eventually loses on the merits.

16. **Injunction: Intent.** The purpose of a temporary restraining order is only to maintain the status quo until a court can hear both parties on the propriety of a temporary injunction.

17. **Federal Acts: Attorney Fees.** The catalyst theory does not apply to claims for attorney fees under 42 U.S.C. § 1988 (2012).

18. **Federal Acts: Attorney Fees: Civil Rights.** A plaintiff who prevails under state law can obtain fees under 42 U.S.C. § 1988 (2012) if the claim on which the plaintiff prevailed is accompanied by a substantial, though undecided, claim arising under 42 U.S.C. § 1983 (2012) from the same nucleus of facts.

Appeal from the District Court for Lincoln County: Richard A. Birch, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

William J. Erickson and Blaine T. Gillett for appellant.

Jon Bruning, Attorney General, and Blake E. Johnson for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Melanie M. requested an administrative hearing after the Department of Health and Human Services (Department) informed her that it was going to change her benefits under the Supplemental Nutrition Assistance Program (SNAP). The Department informed Melanie—a resident of North Platte, Nebraska—that it would hold the hearing in Lincoln, Nebraska. Melanie could participate telephonically at the Department's North Platte office or travel to Lincoln and participate in person.

Melanie filed a complaint in district court, asserting that the Department's regulations and the Due Process Clause required a "face-to-face" hearing in North Platte. The court entered a temporary restraining order, but overruled Melanie's motion for a temporary injunction and sustained the defendants' motion for summary judgment. After applying the three-factor test under *Mathews v. Eldridge*,[1] we affirm the summary judgment as to Melanie's due process claim. But we reverse, and remand for further proceedings on her prayer for relief under the Department's regulations.

## BACKGROUND

Melanie is the mother of four minor children who reside with her in North Platte. She works 15 to 20 hours per week in a retail position. Her husband is estranged, but sometimes helps care for the children.

According to Melanie, caring for one of her children, Ethan M., presents "logistical problems" that are "more than simply extraordinary." Ethan was born without kidneys and suffered

---

[1] *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

a brain embolism. He cannot care for himself. Ethan's former attending physician opined that Melanie's absence from Ethan "is far more than a mere inconvenience" because Melanie is Ethan's "primary caregiver." Melanie said that it is very difficult to find someone else to care for Ethan.

Melanie receives benefits under "SNAP," formerly known as the Food Stamp Program. In Nebraska, the Department administers SNAP and issues electronic benefits transfer cards to eligible households, which they can use to purchase food.[2]

In early 2014, the Department notified Melanie that her SNAP benefits were going to change because her net adjusted income had changed. The Department also informed Melanie that it planned to recover overpayments. Melanie requested an administrative hearing regarding the proposed changes. Her attorney sent a letter to the Department demanding an "in-person, face-to-face hearing in the local office in North Platte."

The Department sent Melanie notices informing her that it would hold a hearing in Lincoln and that Melanie could participate "in person" or telephonically. The notices informed Melanie that she had certain rights, including the right to testify, present testimony from other witnesses, submit documentary evidence, and confront adverse witnesses. Ryan C. Gilbride signed the notices as the hearing officer.

Before any administrative hearing occurred, Melanie filed a complaint in district court individually and as next friend of her four minor children. The complaint named as defendants Kerry T. Winterer and Gilbride (identified as "Employees and Agents of State of Nebraska- Department of Health and Human Services") in their individual and official capacities. Melanie also sued "The State of Nebraska- Department of Health and Human Services."

Citing 42 U.S.C. § 1983 (2012), Melanie alleged that the defendants' refusal to grant her a face-to-face hearing at the Department's North Platte office deprived her of procedural due process. She stated that her "ability to confront and

---

[2] See 475 Neb. Admin. Code, ch. 5, § 001 (2005). See, also, *U.S. v. Mohamed*, 727 F.3d 832 (8th Cir. 2013).

cross-examine witnesses is certainly crippled by the Hobson's choice of either travelling approximately 450 miles round-trip, or participating by telephone without the ability to even see the fact-finder or the adverse witnesses." Melanie also alleged that regulations required the Department to offer her a face-to-face hearing in North Platte and, pending the administrative hearing, to maintain her SNAP benefits at their original level.

Melanie requested injunctive relief requiring the defendants to hold a face-to-face hearing in North Platte, the restoration of SNAP benefits pending an administrative hearing, damages, and attorney fees under 42 U.S.C. § 1988 (2012).

Along with the complaint, Melanie moved for a temporary restraining order and injunction. "Because of the medical conditions of [Melanie's] children," the court entered on the same day a temporary order that restrained the defendants from holding an administrative hearing and ordered them to "continue or resume SNAP benefits." The temporary restraining order remained in effect until the court overruled Melanie's motion for a temporary injunction. The court stated that Melanie had not shown a clear right to her requested relief.

In their answer, the defendants admitted that they offered Melanie a face-to-face hearing only in Lincoln. Winterer and Gilbride affirmatively alleged that they were entitled to qualified immunity. Gilbride also affirmatively alleged that he was entitled to "quasi-judicial immunity since his participation in this matter was limited to his role as a hearing officer."

The court sustained the defendants' motion for summary judgment. First, the court considered whether the Department's regulations entitled Melanie to a face-to-face hearing at the North Platte office. Giving deference to the Department's interpretation of its own rules, the court decided that the Department's reading was consistent with the regulation's plain language. As to Melanie's due process claim, the court acknowledged that she had a property interest in her SNAP benefits and that the Due Process Clause entitled her to a hearing. But it could "find no case that extends [Melanie's] right to participate in the hearing to the right to control the location of the hearing." Alternatively, the court held that Winterer

and Gilbride were entitled to qualified immunity in their individual capacities and that Gilbride was entitled to absolute immunity because he acted in a quasi-judicial capacity.

## ASSIGNMENTS OF ERROR

Melanie generally assigns that the court erred by sustaining the defendants' motion for summary judgment. She specifically assigns, renumbered and restated, that the court erred by (1) finding that the defendants offered Melanie a hearing that "met the regulatory and constitutional requirements of due process," (2) finding that the "individual defendants" were entitled to qualified immunity, and (3) not awarding attorney fees.

## STANDARD OF REVIEW

[1,2] We will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and give that party the benefit of all reasonable inferences deducible from the evidence.[4]

[3] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented which an appellate court decides independently of the decision made by the court below.[5]

## ANALYSIS

### Procedural Due Process

Melanie argues that the Due Process Clause of the 14th Amendment requires the defendants to offer her a face-to-face hearing before reducing her SNAP benefits. Because of Ethan's

---

[3] *D-CO, Inc. v. City of La Vista*, 285 Neb. 676, 829 N.W.2d 105 (2013).

[4] *deNourie & Yost Homes v. Frost*, 289 Neb. 136, 854 N.W.2d 298 (2014).

[5] See *Liddell-Toney v. Department of Health & Human Servs.*, 281 Neb. 532, 797 N.W.2d 28 (2011).

health problems and the distance between Lincoln and North Platte, she contends that the defendants effectively restricted her to a telephonic hearing.

The first step in a due process analysis is to identify a property or liberty interest entitled to due process protection.[6] The defendants do not dispute that a property interest is at stake here. SNAP benefits are a statutory entitlement and, therefore, "property" protected by the Due Process Clause.[7]

[4] Once we decide that due process applies, the question remains what process is due.[8] Due process is a flexible concept that defies precise definition.[9] The process required is that necessary to provide "fundamental fairness" under the particular facts of the case.[10]

[5] In *Mathews*,[11] the U.S. Supreme Court set forth three factors relevant to the specific requirements of due process: first, the private interest that the official action will affect; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[12]

But Melanie argues that we do not have to apply a *Mathews* analysis because in *Goldberg v. Kelly*,[13] the U.S. Supreme Court has specifically held that face-to-face hearings are required in welfare cases. In *Goldberg*, the Court decided that

---

[6] *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003).

[7] See, *Atkins v. Parker*, 472 U.S. 115, 105 S. Ct. 2520, 86 L. Ed. 2d 81 (1985); *Bliek v. Palmer*, 102 F.3d 1472 (8th Cir. 1997).

[8] *Hass v. Neth, supra* note 6.

[9] *Casey v. O'Bannon*, 536 F. Supp. 350 (E.D. Pa. 1982); *In re Interest of Brian B.*, 268 Neb. 870, 689 N.W.2d 184 (2004).

[10] See, *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011); *In re Interest of Brian B., supra* note 9.

[11] *Mathews v. Eldridge, supra* note 1.

[12] See *Hass v. Neth, supra* note 6.

[13] *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).

the government must provide a "pre-termination evidentiary hearing" before discontinuing welfare benefits.[14] The Court identified six elements of an evidentiary hearing: (1) notice of the reasons for the proposed termination; (2) an opportunity to confront adverse witnesses and present "arguments and evidence orally"; (3) retained counsel, if desired; (4) an "impartial" decisionmaker; (5) a decision that rests "solely on the legal rules and evidence adduced at the hearing"; and (6) a statement describing the reasons for the decision and the evidence relied on.[15]

The procedures challenged in *Goldberg* allowed a welfare recipient to contest in writing a proposed termination. But a recipient could not "appear personally" before the final decisionmaker to "present evidence to that official orally" and cross-examine adverse witnesses.[16] The Court noted that "written submissions do not afford the flexibility of oral presentations" and are a poor basis for a decision, "[p]articularly where credibility and veracity are at issue . . . ."[17] But *Goldberg* cautioned that a predeprivation evidentiary hearing "need not take the form of a judicial or quasi-judicial trial."[18]

We conclude that *Goldberg* does not specifically mandate a predeprivation face-to-face hearing in every welfare case. *Goldberg* plainly requires the opportunity to present evidence orally. But the Court did not decide whether due process requires the oral presentation of evidence in a face-to-face hearing. We note that, so far as we can tell, no court has held that telephonic hearings in welfare cases are categorically deficient under *Goldberg*.[19]

So, we must determine the adequacy of a telephonic hearing under the *Mathews* factors. Melanie's private interest is substantial. SNAP recipients "are, by definition, low-income

---

[14] *Id.*, 397 U.S. at 264.

[15] *Id.*, 397 U.S. at 268, 271. See *Mathews v. Eldridge, supra* note 1.

[16] *Goldberg v. Kelly, supra* note 13, 397 U.S. at 268.

[17] *Id.*, 397 U.S. at 269.

[18] *Id.*, 397 U.S. at 266.

[19] See Annot., 88 A.L.R.4th 1094 (1991).

persons who live 'on the very margin of subsistence.'"[20] But the government's interest in the efficient use of public resources weighs in favor of telephonic hearings.[21] Contrary to Melanie's argument, the state's interest in efficiency is not irrelevant when welfare benefits are at stake.[22]

The last *Mathews* factor we must consider is the risk of erroneous deprivation from a telephonic hearing compared to a face-to-face hearing. The difference between the two is, obviously, that the hearing officer in a telephonic hearing is unable to visually observe the witnesses in the flesh. Thus, the officer is deprived of the full range of demeanor evidence.[23]

The "'wordless language'" of a witness' demeanor is an important tool for evaluating credibility.[24] Even the "best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried."[25] Of course, a witness' aural mannerisms are observable telephonically. But a decisionmaker who can hear but not see a witness does not get the whole picture: "Over the phone, the fact finder cannot see the way a witness sits, shifts around, or blushes. Over the phone, the fact finder cannot observe if the witness shakes nervously, smiles maliciously, or grimaces with pain."[26]

---

[20] *Bliek v. Palmer, supra* note 7, 102 F.3d at 1476, quoting *Mathews v. Eldridge, supra* note 1. See *Casey v. O'Bannon, supra* note 9.

[21] See, *Casey v. O'Bannon, supra* note 9; *Murphy v. Terrell*, 938 N.E.2d 823 (Ind. App. 2010). See, also, *Mathews v. Eldridge, supra* note 1; *Penry v. Neth*, 20 Neb. App. 276, 823 N.W.2d 243 (2012).

[22] See, e.g., *Casey v. O'Bannon, supra* note 9.

[23] See, *id.*; *State, ex rel. Human Services Dept. v. Gomez*, 99 N.M. 261, 657 P.2d 117 (1982); Allan A. Toubman et al., *Due Process Implications of Telephone Hearings: The Case for an Individualized Approach to Scheduling Telephone Hearings*, 29 U. Mich. J.L. Reform 407 (1996).

[24] *Broadcast Music v. Havana Madrid Restaurant Corp.*, 175 F.2d 77, 80 (2d Cir. 1949).

[25] *Id.* See, also, 3 William Blackstone, Commentaries *373.

[26] Neil Fox, Note, *Telephonic Hearings in Welfare Appeals: How Much Process is Due?*, 1984 U. Ill. L. Rev. 445, 471 (1984).

[6] The question here, though, is not whether the in-person observation of witnesses has value—it does—but whether its value is so great that the Due Process Clause requires it in Melanie's welfare appeals. While "[p]hysical appearance can be a clue to credibility, . . . of equal or greater importance is what a witness says and how she says it."[27] Furthermore, the importance of demeanor evidence depends on the role that credibility plays in a particular determination.[28] Here, the actions which Melanie administratively appealed are reductions in her benefits because her net income changed.

We conclude that for this type of hearing, the risk of erroneous deprivation is not so great that a face-to-face hearing in North Platte is constitutionally required.[29] Credibility does not play a large role in every welfare case.[30] Melanie argues that SNAP entitlement depends on """"an individualized determination of income, expenses, and deductions for each recipient," thereby creating substantial risks of erroneous deprivations.'"[31] But, after reviewing the applicable regulations, we believe that determining the amount by which a recipient's net income has changed will usually "involve

---

[27] *Babcock v. Employment Division*, 72 Or. App. 486, 490, 696 P.2d 19, 21 (1985).

[28] See, *Gray Panthers v. Schweiker*, 716 F.2d 23 (D.C. Cir. 1983); *Stiver v. Shalala*, 879 F. Supp. 1021 (D. Neb. 1995); *In re Suspension of Driver's License*, 143 Idaho 937, 155 P.3d 1176 (Idaho App. 2006); *State, ex rel. Human Services Dept. v. Gomez, supra* note 23; Fox, *supra* note 26; Toubman et al., *supra* note 23.

[29] See, *Casey v. O'Bannon, supra* note 9; *Murphy v. Terrell, supra* note 21; *State, ex rel. Human Services Dept. v. Gomez, supra* note 23. See, also, *Penry v. Neth, supra* note 21; *Sterling v. District of Columbia*, 513 A.2d 253 (D.C. 1986); *Babcock v. Employment Division, supra* note 27; *Greenberg v. Simms Merchant Police Service*, 410 So. 2d 566 (Fla. App. 1982).

[30] See, *Gray Panthers v. Schweiker, supra* note 28; Fox, *supra* note 26.

[31] Brief for appellant at 9, quoting *Bliek v. Palmer*, 916 F. Supp. 1475 (N.D. Iowa 1996).

relatively straightforward matters of computation."[32] In fact, Melanie stated at oral argument that her credibility would not play a large role in the Department's decision.

In conclusion, after weighing the private interest, the government's interest, and the risk of erroneous deprivation, we determine that the Due Process Clause does not require a face-to-face hearing at the local office in the particular SNAP appeals in question. We do not consider whether a telephonic hearing violates the Equal Protection Clause because Melanie did not specifically assign this issue as error in her opening brief. For an appellate court to consider an alleged error, a party must specifically assign and argue it.[33]

## Nebraska Regulations

Apart from her rights under the federal Constitution, Melanie argues that the Department's regulations entitle her to a face-to-face hearing at the local office. The defendants respond that Melanie did not specifically assign this issue as error. But we decide that the third assignment in her brief—which asks us to consider whether a telephonic hearing "met the regulatory and constitutional requirements of due process"—is sufficient to put the question before this court.

Section 1983 does not provide a remedy for the violation of state law.[34] But, while Melanie could have been more precise, we read her complaint to include a prayer for a declaration that a face-to-face hearing is independently required by the Department's regulations.[35] Furthermore, an injunction—but not damages—would be within the scope of such declaratory

---

[32] *Califano v. Yamasaki*, 442 U.S. 682, 696, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). See 475 Neb. Admin. Code, ch. 3, §§ 002.02A and 002.02B (2005) and 003 (2013).

[33] *deNourie & Yost Homes v. Frost, supra* note 4.

[34] See, e.g., Martin A. Schwartz & Kathryn R. Urbonya, Section 1983 Litigation 26 (2d ed. 2008).

[35] See *Weeks v. State Board of Education*, 204 Neb. 659, 284 N.W.2d 843 (1979).

relief.[36] The court's order sustaining the defendants' motion for summary judgment treated Melanie's regulatory and constitutional arguments as separate theories. So, we consider whether the court erred by entering a summary judgment against Melanie's requests for declaratory and injunctive relief based on the Department's regulations. We note that the defendants have not raised sovereign immunity at trial or on appeal.[37]

[7-9] Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.[38] Regulations bind the agency that promulgated them just as they bind individual citizens, even if the adoption of the regulations was discretionary.[39] An agency does not generally have the discretion to waive, suspend, or disregard a validly adopted rule.[40]

[10-12] For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.[41] In the absence of anything to the contrary, language in a rule or regulation is to be given its plain and ordinary meaning.[42] We accord deference to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent.[43]

The regulation in question is 475 Neb. Admin. Code, ch. 1, § 007 (2005). Section 007 provides:

---

[36] See, *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012); *Duggan v. Beerman*, 249 Neb. 411, 544 N.W.2d 68 (1996).

[37] See, *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014); *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

[38] *Robbins v. Neth*, 273 Neb. 115, 728 N.W.2d 109 (2007).

[39] *Id.*

[40] See *id.*

[41] See *Utelcom, Inc. v. Egr*, 264 Neb. 1004, 653 N.W.2d 846 (2002).

[42] *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

[43] See *Marion's v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 982, 858 N.W.2d 178 (2015).

A fair hearing must be provided to any household wishing to appeal any action or inaction of the local office which affects the household's participation. Fair hearings may be conducted at the local office either by telephone with a hearing officer or a hearing officer coming to the local office. The household member requesting the fair hearing will be notified by the [Department's] Legal Division of which type of hearing will be held. The household must be given the option of requesting a face-to-face hearing if a telephone hearing was scheduled.

As the district court noted, the second sentence provides that the Department may hold either a telephonic or a face-to-face hearing at the local office. The last sentence provides the household can request a face-to-face hearing if the Department initially schedules a telephonic hearing. The court reasoned that "[t]o interpret the last sentence . . . as allowing [Melanie] to require that the face-to-face hearing be held in the county of her residence, would contradict the prior provision of the regulation and essentially turn the word 'may' into 'shall.'" So, the court appeared to conclude that § 007 gave Melanie the right to a face-to-face hearing, but that the location of such hearing was left to the Department's discretion.

But the court's interpretation renders the last sentence meaningless. The plain and ordinary meaning of § 007 requires that the Department hold the face-to-face hearing at the local office. Although the choice between a face-to-face or a telephonic hearing at the local office is initially permissive, a face-to-face hearing is mandatory if the household requests one. Read in the context of the regulation as a whole, the household's right to request a face-to-face hearing in the last sentence is a right to request such a hearing at the local office, not at a location of the Department's choosing. Thus, Melanie is entitled to a face-to-face hearing at the North Platte office.

## Attorney Fees

Melanie argues that she is entitled to attorney fees under 42 U.S.C. § 1988. Apparently referring to the temporary

restraining order, she asserts that the district court "issued an enforceable order to restore benefits, which [the defendants] indisputably did."[44] The defendants argue that Melanie's § 1983 action did not materially alter her legal relationship with the Department.

[13,14] Generally, a party may recover attorney fees and expenses in a civil action only if provided for by statute or if a recognized and accepted uniform course of procedure allows the recovery of attorney fees.[45] The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C § 1988(b), provides that the court may award a reasonable attorney fee to the "prevailing party" in an action that enforces 42 U.S.C. § 1983. A plaintiff is a "prevailing party" under § 1988 if the plaintiff obtains actual relief on the merits of his or her claim that alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.[46] An injunction or a declaratory judgment, like a damages award, will usually satisfy the prevailing party test.[47] In some circumstances, a plaintiff can "prevail" by obtaining temporary injunctive relief.[48]

[15] But a plaintiff who obtains temporary injunctive relief is not a prevailing party under § 1988 if the plaintiff eventually loses on the merits. In *Sole v. Wyner*,[49] the plaintiff informed Florida state officials, the defendants, of her intent to protest war by assembling nude persons in the shape of a "peace sign." The defendants told the plaintiff that the participants had to wear bathing suits. The plaintiff sued under

---

[44] Reply brief for appellant at 5.

[45] See *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004).

[46] *Lefemine v. Wideman*, ___ U.S. ___, 133 S. Ct. 9, 184 L. Ed. 2d 313 (2012).

[47] *Id*.

[48] See, *McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010); *People Against Police Violence v. City of Pitts*., 520 F.3d 226 (3d Cir. 2008); Annot., 81 A.L.R. Fed. 2d 1 (2014); 2 Rodney A. Smolla, Federal Civil Rights Acts § 16:4 (3d ed. 2015).

[49] *Sole v. Wyner*, 551 U.S. 74, 78, 127 S. Ct. 2188, 167 L. Ed. 2d 1069 (2007).

§ 1983, asserting her rights under the First Amendment. The complaint requested a temporary injunction against interference with the peace sign demonstration and a permanent injunction against interference with "'future expressive activities.'"[50] The court issued a temporary injunction. But, after rogue nudists at the peace sign demonstration refused to stay behind a partition, the court sustained the defendants' motion for summary judgment.

The U.S. Supreme Court held that the plaintiff's victory at the temporary injunction stage did not entitle her to attorney fees. The Court stated that "a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her."[51] The Court expressed no opinion of whether attorney fees might be awarded for a preliminary injunction if the case was resolved without a final decision on the merits.[52] But a "plaintiff who achieves a transient victory at the threshold of an action" does not deserve an attorney fee if "her initial success is undone and she leaves the courthouse emptyhanded."[53]

[16] Here, the court issued a temporary restraining order against the defendants, but overruled Melanie's motion for a temporary injunction and eventually entered a judgment on the merits against Melanie's due process claim. We note that the purpose of a temporary restraining order is only to maintain the status quo until a court can hear both parties on the propriety of a temporary injunction.[54] The order issued by the court was not a decision on the merits.[55] Furthermore, to the extent that Melanie prevailed under federal law, her victory was

---

[50] *Id*., 551 U.S. at 79.

[51] *Id*., 551 U.S. at 86.

[52] *Id*.

[53] *Id*., 551 U.S. at 78.

[54] See *State ex rel. Beck v. Associates Discount Corp*., 161 Neb. 410, 73 N.W.2d 673 (1955).

[55] See, e.g., *Garcia v. Yonkers School Dist*., 561 F.3d 97 (2d Cir. 2009).

fleeting.[56] The court terminated the temporary restraining order by overruling Melanie's motion for a temporary injunction, and it finally denied her any judicial relief under federal law by sustaining the defendants' motion for summary judgment. Melanie "may have won a battle, but [she] lost the war."[57] She is not a prevailing party under § 1988(b).

[17] Alternatively, Melanie suggests that she does not have to prevail in the courtroom to be a prevailing party. She contends that if "a lawsuit produces voluntary action by a defendant that affords all or some of the relief sought through a judgment, the plaintiff is deemed to have prevailed regardless of the absence of a favorable formal judgment."[58] However, we have held that the "'catalyst theory'" does not apply to claims for attorney fees under § 1988.[59] A plaintiff cannot be a prevailing party under federal fee-shifting statutes without "the necessary judicial *imprimatur* on the change."[60]

[18] Finally, we note again that § 1983 does not remedy violations of Nebraska law.[61] A plaintiff who prevails under state law can obtain fees under § 1988 if the claim on which the plaintiff prevailed is accompanied by a "'substantial,'" though undecided, § 1983 claim arising from the same nucleus of facts.[62] But, here, the district court decided Melanie's due process claim against her and we have affirmed that part of the judgment. Thus, in this case, a victory under Nebraska law will not make Melanie a prevailing party under § 1988.

---

[56] See *Sole v. Wyner, supra* note 49.

[57] See *National Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 65 (3d Cir. 2013).

[58] Reply brief for appellant at 4.

[59] *Simon v. City of Omaha, supra* note 45, 267 Neb. at 727, 677 N.W.2d at 137.

[60] *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). See, also, Schwartz & Urbonya, *supra* note 34, at 200.

[61] See, e.g., Schwartz & Urbonya, *supra* note 34.

[62] *Manning v. Dakota Cty. Sch. Dist.*, 279 Neb. 740, 746, 782 N.W.2d 1, 8 (2010).

CONCLUSION

We conclude that Melanie is entitled to a face-to-face hearing at the Department's local office under 475 Neb. Admin. Code, ch. 1, § 007, but not under the Due Process Clause. She is not a prevailing party for purposes of attorney fees under 42 U.S.C. § 1988, because she lost on the merits of her claim under federal law. We reverse, and remand for further proceedings on Melanie's request for a declaration of rights under 475 Neb. Admin. Code, ch. 1, § 007, and injunctive relief within the scope of such declaration.

Affirmed in part, and in part reversed and remanded for further proceedings.

———————

Archer Daniels Midland Company, appellant, v. State of Nebraska et al., appellees.

___ N.W.2d ___

Filed April 23, 2015.    No. S-14-724.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

3. **Taxation: Appeal and Error.** An appellate court reviews questions of law arising during appellate review of decisions by the Tax Equalization and Review Commission de novo on the record.

4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the lower tribunal.

5. ____: ____. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

6. **Statutes: Legislature: Intent: Appeal and Error.** In discerning the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

7. **Statutes.** If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.